**MERCY GENERAL HOSPITAL, a Michigan Non-profit Corporation, Plaintiff,**

v.

**Caspar P. WEINBERGER, Secretary of the Department of Health, Education and Welfare, et al., Defendants.**

### Civ. A. No. 5–71174.

United States District Court, E. D. Michigan, S. D.

June 23, 1975.

Bell & Brown, P. C. by Edward F. Bell, Patmon, Young & Kirk, P. C. by Stanley R. Kirk, Detroit, Mich., for plaintiff.

Ralph B. Guy, Jr., U. S. Atty. by Gwenn L. Carr, Asst. U. S. Atty., Detroit, Mich., Frank J. Kelley, Michigan Atty. Gen. by William K. Basinger, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING INJUNCTIVE RELIEF

KAESS, Chief Judge.

This matter comes before the Court on the Motion of the Plaintiff for a Preliminary Injunction, and on the Motion of the Defendants to Dismiss the complaint. This action was originally initiated by the plaintiff, a Michigan non-profit corporation, seeking damages and injunctive and declaratory relief. The essence of the complaint relates to the termination of "Medicare" and "Medicaid" reimbursement payments due from the defendants to the plaintiff prior to any type of review or hearing. By way of injunction, plaintiff seeks to enjoin the defendants from withholding future payments. Plaintiff also seeks to have the provisions of 20 C.F.R. § 405.491(b) (now 20 C.F.R. § 405.1803[b]) declared unconstitutional. Also sought, from the state defendants, are damages, premised on an alleged conspiracy to drive the plaintiff out of business and alleged violations of 42 U.S.C. §§ 1983, 1985. This Opinion will deal solely with the requested injunctive relief.

A brief review of the factual background is necessary to an understanding of the matters pending.

"Medicaid" is a joint federal-state medical care program which is administered by the state pursuant to Title 19 of the Social Security Act, 42 U.S.C. § 1396, et seq. The Michigan Department of Social Services is the state agency empowered and required to administer the Medicaid program in Michigan, M.C.L.A. § 400.105; M.S.A. § 16.490(16).

"Medicare" is a federally funded and federally administered program of medical care for certain individuals pursuant to Title 18 of the Social Security Act, 42 U.S.C. § 1395, et seq.

Michigan Blue Cross is the fiscal intermediary employed by the federal government to process provider claims and make audits pursuant to the Medicare program. Michigan Blue Cross is also

the agency designated by contract with the Michigan Department of Social Services as the fiscal agency to perform necessary audits of Medicaid provider cost reports pursuant to the authorization of 45 C.F.R. § 249.82(a)(2). Since reimbursement under both the Medicaid and Medicare programs is based on reasonable costs, a simultaneous audit of both program costs is done by the intermediary, Michigan Blue Cross.

Payments under both Medicare and Medicaid are made on an estimated cost basis, which payments are adjusted after an audit of the actual costs is made. Michigan Blue Cross, as the result of an audit done on plaintiff's costs for the fiscal years ending December of 1966 through December of 1973, found that both programs had overpaid plaintiff in relation to its actual costs for those years.

Michigan Blue Cross, pursuant to its contract with the Michigan Department of Social Services, provided the Department with these audit findings. The Department proceeded to begin recoupment of those costs from plaintiff's current claims for reimbursement pursuant to 20 C.F.R. § 405.491(b), which regulation is incorporated into the Medicaid program by the State of Michigan Plan for Medical Assistance. As indicated previously, the regulation has since been superseded by 20 C.F.R. § 405.1803(b). Both regulations provide that recoupment of overpayments should be made regardless of any hearing requests.

Plaintiff filed an appeal concerning the audit with Michigan Blue Cross on February 7, 1974. Apparently, a hearing on this appeal is tentatively scheduled within 30 days from the date hereof according to Michigan Blue Cross.

No recoupments have been made by the defendants for services rendered by the plaintiff since November, 1974, inasmuch as the plaintiff has not operated as a hospital since that time, and thus no services were offered. This termination of services apparently resulted both from renovation work being done at the hospital and also from the termination of reimbursement payments from the defendants.

The primary issue then relates to whether the plaintiff was afforded due process in the termination of the payments. As framed by the plaintiff, the issue "is not whether or not there were overpayments in the past, although this will certainly be raised at any hearing provided, but is whether the Defendants can terminate the Medicaid payments without providing a prior hearing."

The term, "Due Process", perhaps more than any other, has consistently eluded a concrete, final definition. Rather, it appears that the requirements of due process have been framed by application to various sets of circumstances. As the Supreme Court noted in *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)

> Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; *it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.* (Emphasis added)

See also, *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307,

1321 (1960). Whether or not the plaintiff here is entitled to a pre-termination hearing must be determined by a balancing of the interests involved and the present procedure provided.

■ The concept of a hearing, as a procedural safeguard, has most recently been analyzed in the context of debtor-creditor relations. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Stlevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). In each case, it has been held that due process requires that a hearing be held prior to the deprivation of property. Plaintiff, by analogy, argues that its right to reimbursement payments from the defendants is entitled to no less. While the Court finds these cases instructive in the area of due process requirements, they are distinguishable on the nature of the interest sought to be protected and in balancing the respective interests of the parties.

■ A case more directly on point, and relied on by both the plaintiff and the defendants, is *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). In *Goldberg*, the issue was whether the due process clause required that a welfare recipient be afforded a hearing prior to the termination of benefits or whether a post-termination hearing was sufficient. In affirming the District Court's holding that a prior hearing was required, the Court noted not only the balancing of the interests involved, i. e., the rights of the individual to welfare benefits versus the interest of the state to summary proceedings in such matters, but, also, the very nature of the individual interest involved. In addressing the second criterion, the Court stated

But we agree with the District Court that when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. Cf. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. (Footnote omitted) Cf. *Nash v. Florida Industrial Commission*, 389 U.S. 235, 239, 88 S.Ct. 362, 366, 19 L.Ed.2d 438 (1967). Thus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy. *Goldberg, supra*, 397 U.S. at 264, 90 S.Ct. at 1018, 25 L.Ed.2d at 296.

However, this should not lead to the implication that termination of any government-sponsored benefit program has, as a condition precedent, a prior hearing requirement.

It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing. *Goldberg, supra*, at 263, 90 S.Ct. at 1018, 25 L.Ed.2d at 296.

In citing *Goldberg*, plaintiff suggests that the current situation of the hospital is nearly identical to that of the welfare recipient in that the termination of reimbursement payments may well spell the end of the hospital's existence. Plaintiff relates that it is almost entirely dependent on those funds since most of its services are offered to "Medicare" or "Medicaid" patients. The defendants, on the other hand, argue that the situation here

is more analogous to that of a blacklisted government contractor in that a lack of government contracts may well force him out of business.

While each position has merit, this Court is inclined to adopt the position of the government. Termination of welfare benefits affects a private individual's very means of existence, i. e., food and shelter. The reliance of the hospital on these funds, while great indeed, does not rise to the same level. It must also be remembered in this context that the Court is dealing with a corporation as opposed to a private individual. This was noted in *Russi v. Weinberger*, 373 F.Supp. 1349, 1352 (E.D.Va.1974), a case similar to the one at hand. In granting Summary Judgment for the defendant, the court stated

> The Court is dealing here with a dispute between the government and a professional corporation composed of established doctors. While there is no question that the corporation and the doctors individually have suffered serious consequences, economic and otherwise, as a result of the decision to suspend payments, the situation is closer to that of a blacklisted government contractor than to termination of aid to a welfare recipient. See *Gonzalez v. Freeman*, 118 U.S.App.D.C. 180, 334 F.2d 570 (1964). Ordinarily, in circumstances such as this, suspension of Part B payments can be temporarily borne by the affected doctor or corporation pending resolution of the dispute in a post-action hearing. While it might be argued that precisely this solvency on the plaintiffs' part would enable the government to collect any overpayments at a later time, the method chosen by the government to protect trust fund revenues is not unreasonable. *Cf. Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). (Footnote omitted) The equities simply do not impel the Court in plaintiffs' direction.

See also, *Langhorne Gardens Inc. v. Weinberger*, 371 F.Supp. 1216, 1221 (E.D.Pa. 1974).

Thus, while this Court concludes that due process does not require a hearing prior to the termination of payments, it is of the opinion that a post-termination review is most appropriate. *Coral Gables Convalescent Home Inc. v. Richardson*, 340 F.Supp. 646, 650 (S.D.Fla. 1972); *Langhorne, supra,* at 1219; *Russi, supra,* at 1353; *Wilson Clinic & Hospital, Inc. v. Blue Cross of South Carolina*, 494 F.2d 50, 54 (4th Cir. 1974); *Hilburn v. Butz*, 463 F.2d 1207, 1209 (5th Cir. 1972).

The procedure and requisites for the hearing process before the intermediary, subsequent to the audit determination, are set forth at 20 C.F.R. § 1801, et seq. The plaintiff requested such a hearing of Michigan Blue Cross, the fiscal intermediary, February 7, 1974. To date, no hearing has been held to review the audit determinations.

Therefore, it is the Order of this Court that a hearing, pursuant to the provisions of 20 C.F.R. § 1801, et seq., be commenced within thirty (30) days of the entry of this Order. Further, for the reasons set forth above, the Motion for Preliminary Injunction is hereby denied.

IT IS SO ORDERED.