REHABILITATION CENTER, INC v BLUE CROSS & BLUE SHIELD
OF MICHIGAN

ALLEN PARK CONVALESCENT HOME, INC v BLUE CROSS &
BLUE SHIELD OF MICHIGAN

NIGHTINGALE WEST, INC v BLUE CROSS & BLUE SHIELD OF
MICHIGAN

VENOY CONTINUED CARE CENTER v BLUE CROSS & BLUE
SHIELD OF MICHIGAN

WESTLAND CONVALESCENT CENTER v BLUE CROSS & BLUE
SHIELD OF MICHIGAN

Docket Nos. 78-1823 thru 78-1830. Submitted June 21, 1979, at
Detroit.—Decided November 5, 1979. Leave to appeal applied
for.

In 1977, Blue Cross and Blue Shield of Michigan, a nonprofit
medical care corporation, decided to change the method for
computing the rate of reimbursement for skilled nursing care
under its convalescent and long-term care program. Blue Cross
notified the affected participating nursing homes of the pro-
posed changes in the method of computing the rate of reim-
bursement and sent to each participating nursing home a new
contract incorporating the proposed changes. Blue Cross sub-
mitted to the Michigan Commissioner of Insurance its new rate
of reimbursement plan. The Commissioner notified the affected
nursing homes that a public hearing on the matter of the
revised reimbursement plan would be held. The nursing homes
requested a contested case hearing. The request for a contested
case hearing was denied by the Commissioner of Insurance,
who subsequently issued an order approving the new plan for
reimbursement.

Eight separate actions, involving some 50 nursing homes as
plaintiffs, were brought in circuit court against Blue Cross and/
or the Commissioner of Insurance seeking review of the Com-
missioner's decision. These actions were consolidated for hear-
ing below. The Wayne Circuit Court, Horace W. Gilmore, J.,

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 1 Am Jur 2d, Administrative Law §§ 129, 130, 181.
[2-4] 16A Am Jur 2d, Constitutional Law §§ 580-586.

determined that plaintiffs were entitled to a trial-type contested case hearing and remanded the matter to the Commissioner of Insurance for such a hearing. The Commissioner of Insurance appeals, arguing that rate of reimbursement approval does not require a trial-type hearing. *Held:*

1. The due process clause of the constitution requires that a hearing be provided before the government seeks to deprive a person of a property right. The property interest necessary to invoke the constitutional right to a hearing must be more than an abstract need or desire or a unilateral expectation of a benefit by the person holding the property interest; rather, the property interest must be such that the person holding the property interest has a legitimate claim of entitlement to the benefit.

2. The substantial economic interest of nursing homes in the convalescent and long-term illness care program offered by Blue Cross and Blue Shield of Michigan, while a property interest, is not the type of property interest to which the constitutional right to a due process hearing attaches, since the nursing homes do not have a legitimate claim of entitlement, statutory or otherwise, to the unaltered continuation of the program.

3. The request before the Commissioner of Insurance for the change in the rate of reimbursement by Blue Cross under its convalescent and long-term care program was not subject to the contested case provisions of the Administrative Procedures Act. The statutory scheme for approval of rates of payment by a nonprofit medical care corporation does not require an evidentiary hearing, thus, the approval process by the Commissioner of Insurance is not a contested case within the meaning of the Administrative Procedures Act.

Reversed.

BEASLEY, J., concurred in the opinion of the Court; however, he further urged that the Legislature give consideration to spelling out in the statute a procedure for reviewing rates of payments which would include establishing standards for such review.

1. ADMINISTRATIVE LAW — INSURANCE — MEDICAL CARE SERVICES — REGULATION.

The rates charged subscribers and the rates of payment to contracting hospitals, nursing facilities and home health care agencies by Blue Cross and Blue Shield of Michigan, a nonprofit medical care corporation, are subject to approval of the

Michigan Commissioner of Insurance (MCL 550.503; MSA 24.623).

2. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY RIGHTS — HEARINGS. .

The due process clause of the constitution requires that a hearing be provided before the government seeks to deprive a person of a property right.

3. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY RIGHTS.

The property interest in a benefit such that the deprivation of that benefit gives rise in the person holding that interest to a right to a hearing must be more than an abstract need or desire or the unilateral expectation of that property interest; rather, such person must have a legitimate claim of entitlement to the benefit.

4. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY RIGHTS — MEDICAL CARE SERVICES PROGRAM.

The substantial economic interest of nursing homes in a convalescent and long-term illness care program offered by a nonprofit medical care corporation, while a property interest, is not the type of property interest for which the constitutional right to due process requires a hearing prior to termination, since the nursing homes do not have a legitimate claim of entitlement, statutory or otherwise, to the unaltered continuation of the program.

5. ADMINISTRATIVE LAW — CONTESTED CASES — MEDICAL CARE SERVICES — RATES — REGULATION.

A contested case hearing pursuant to the Administrative Procedures Act is not required prior to approval by the Commissioner of Insurance of a revision to the rate of reimbursement to nursing homes under a convalescent and long-term care program offered by a nonprofit medical care corporation, since the statutory scheme for rate of payment approval by the Commissioner of Insurance does not require an evidentiary hearing, and, thus, such approval process is not a contested case within the meaning of the Administrative Procedures Act (MCL 24.203[3]; MSA 3.560[103][3]).

*Cook & Pringle, P.C.,* for plaintiff Rehabilitation Center, Inc.

*Barris, Sott, Denn & Driker* (by *Eugene Driker,*

*Stephen E. Glazek* and *Barbara Shaw Harvey),* for plaintiff Allen Park Convalescent Home, Inc.

*David Lebenbom, P.C.,* for Nightingale West Inc.

*Bellanca, Beattie & DeLisle,* for Venoy Continued Care Center, Inc.

*Frimet, Goren & Bellamy, P.C.* (by *Alan G. Gilchrist),* for Westland Convalescent Center.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Louis J. Porter,* Assistants Attorney General, for defendant Commissioner of Insurance.

Before: BASHARA, P.J., and BEASLEY and J. DANER,* JJ.

BASHARA, P.J. In 1966, Blue Cross and Blue Shield of Michigan instituted a convalescent and long-term illness care (CLTC) program. Its purpose is to provide skilled nursing care to patients who would otherwise require hospitalization at a significantly higher cost. In order for a nursing home to qualify for participation in the program, it must be accredited by the Joint Commission on Accreditation of Hospitals.

Plaintiffs are nursing homes which have contracted with Blue Cross to participate in the CLTC program. In order to become accredited, some of the plaintiffs upgraded their facilities by adding additional personnel and equipment.

For 11 years following the inception of the program, the rate at which Blue Cross would reimburse plaintiffs for services rendered to Blue Cross

---

* Circuit judge, sitting on the Court of Appeals by assignment.

subscribers remained fixed at the lesser of one-half the average per diem charged for acute care by local hospitals or the actual bill charged by the nursing home, if reasonable and customary. In September, 1977, Blue Cross notified plaintiffs that the program was being changed to limit reimbursement to a ceiling based upon the 80th percentile of the Medicare rates of payment on a regional basis. Plaintiffs were also sent new contracts, effective October 1, 1977.

Under the new contract, Blue Cross was to reimburse participating providers according to its reimbursement policies as established from time to time by its Board of Directors. On September 30, 1977, Blue Cross notified plaintiffs that reimbursement for their services would be limited to $35.98 per day.

Several of the plaintiffs then brought suit in Wayne County Circuit Court, and temporary restraining orders were issued preventing implementation of the revised formula.

On November 8, 1977, the Insurance Commissioner for Michigan notified plaintiffs that a public hearing would be held on the matter of the revised reimbursement ceilings. Plaintiffs' requests for a contested hearing were denied. The Insurance Commissioner subsequently issued an order approving the new plan of reimbursement.

Plaintiffs sought judicial review of the Commissioner's decision. The Wayne County Circuit Court found in favor of plaintiffs and remanded the case to the Commissioner for a trial-type contested hearing. From that decision and order, the Commissioner appeals.

Blue Cross and Blue Shield of Michigan is a nonprofit medical care corporation, MCL 550.301 et seq.; MSA 24.591 et seq. As such, rates charged

subscribers and rates of payment to contracting hospitals, nursing facilities and home health care agencies are subject to the approval of the Commissioner of Insurance. MCL 550.503; MSA 24.623.

The sole issue before us is whether plaintiffs are entitled to a contested hearing before the Commissioner of Insurance as an integral part of the rate-approval procedure. The lower court ruled that plaintiffs were entitled to such a hearing on two bases: fundamental due process and a statutory right under § 3(3) of the Administrative Procedures Act, MCL 24.203(3); MSA 3.560(103)(3).

When the government seeks to deprive a person of a property right, due process requires a hearing appropriate to the nature of the case. *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 633; 227 NW2d 736 (1975). The concept of "property" has been broadly construed to include interests which do not fall within traditional notions. *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970). However, there are limits to what constitutes a property interest. In *Board of Regents of State Colleges v Roth,* 408 US 564, 577; 92 S Ct 2701, 2709; 33 L Ed 2d 548, 561 (1972), the Supreme Court explained as follows:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings

that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them."

Plaintiffs have failed to demonstrate the deprivation of any property interest in this case.

Plaintiffs argue that they have a substantial economic stake in the CLTC program which constitutes a property interest. While plaintiffs may be economically dependent upon payments derived from the CLTC program, they have failed to demonstrate any "legitimate claim of entitlement", statutory or otherwise, to the unaltered continuation of the program.

Plaintiffs' claim that *Morgan v United States,* 304 US 1; 58 S Ct 773; 82 L Ed 1129 (1938), is analogous to the instant case is entirely without merit. In *Morgan,* the Supreme Court held that cattle market agencies had a right to a hearing prior to the determination, by the Secretary of Agriculture, of the maximum rates which those agencies could charge for their services. In the instant case, the Commissioner of Insurance does not set the maximum rates which plaintiffs may charge for their services. Plaintiffs are free to charge whatever they want. If they feel that Blue Cross payments are inadequate, they may decline to enter into participation contracts with Blue Cross.

Plaintiffs also cite a number of cases involving Medicare and Medicaid payments to hospitals and nursing homes. *Mercy General Hospital v Weinberger,* 410 F Supp 344 (ED Mich, 1975), *Langhorne Gardens, Inc v Weinberger,* 371 F Supp 1216

(ED Pa, 1974), *Coral Gables Convalescent Home, Inc v Richardson,* 340 F Supp 646 (SD Fla, 1972). In those cases, the government sought to reduce or terminate payments due particular institutions in order to recoup prior overpayments. The Courts held that procedural due process required at least a post-termination hearing. However, the health care providers in those cases were entitled by statute and contract to be reimbursed for services they had provided. See *Langhorne, supra,* 1220. Plaintiffs in the instant case have demonstrated nothing more than a unilateral expectation that the CLTC program would continue unchanged. Under *Roth, supra,* this is not a property interest to which the requirements of procedural due process attach.

Plaintiffs also contend that a contested hearing is mandated by the Administrative Procedure Act, MCL 24.203(3); MSA 3.560(103)(3), which provides in pertinent part:

"(3) 'Contested case' means a proceeding, including * * * rate-making, price-fixing, and licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing."

Plaintiffs argue that the language "including rate-making" indicates that such proceedings are to be considered contested cases automatically. Such an interpretation was rejected with respect to licensing in *Kelly Downs, Inc v Racing Comm,* 60 Mich App 539; 231 NW2d 443 (1975). Unless an evidentiary hearing is required by law, the proceeding is not a "contested case". *13-Southfield Associates v Dept of Public Health,* 82 Mich App 678, 685; 267 NW2d 483 (1978). While MCL

550.503; MSA 24.623 provides for approval of Blue Cross rates of payment by the Insurance Commissioner, it does not require an evidentiary hearing. Hence, it is not a "contested case".

The decision of the circuit court is reversed.

J. DANER, J., concurred.

BEASLEY, J. *(concurring)*. While concurring with the majority opinion, I would urge the Legislature to give consideration to amplifying the statute to spell out a procedure for review of rates of payment to contracting hospitals which will include establishing standards for such review. *Blue Cross & Blue Shield of Michigan v Insurance Comm'r*, 403 Mich 399, 428; 270 NW2d 845 (1978).