BLUE CROSS AND BLUE SHIELD OF MICHIGAN v INSURANCE
BUREAU

Docket Nos. 46857, 52454, 52485, 52714. Submitted June 4, 1980, at
Lansing.—Decided March 3, 1981.

The main issue in this appeal concerns a claim by Blue Cross and
Blue Shield of Michigan (BCBSM) that information that it
submitted to the Insurance Bureau for purposes of obtaining a
rate increase is not subject to public disclosure under the
Michigan Freedom of Information Act (FOIA) because the
information constitutes trade secrets which are exempt from
disclosure under the act. In mid-1977, the Insurance Bureau
received requests from competitors of BCBSM to release infor-
mation previously filed by BCBSM. BCBSM filed suit in Ingham
Circuit Court seeking to prevent public disclosure of the infor-
mation. A temporary restraining order was issued prohibiting
release of the information until further order of the court,
Michael G. Harrison, J. Thereafter, BCBSM sought rate
changes in accordance with materials filed for approval of the
Commissioner of Insurance on March 3, 1978. A hearing was
ordered to determine if the rate increases were justified. The
Michigan Citizens Lobby and the Attorney General both inter-
vened in the rate proceeding. BCBSM was ordered by the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 768.
[2-4] 66 Am Jur 2d, Records and Recording Laws § 32.
What are "records" of agency which must be made available under
the Freedom of Information Act (5 USCS § 552(a)(3)). 50 ALR Fed
336.
[3] 66 Am Jur 2d, Records and Recording Laws § 44.
[3, 5, 6] 66 Am Jur 2d, Records and Recording Laws § 36.
What are matters "specifically exempted from disclosure by stat-
ute" under Freedom of Information Act (5 USCS § 552(b)(3)). 45 L
Ed 2d 763.
[4] 66 Am Jur 2d, Records and Recording Laws § 33.
[5, 6] 66 Am Jur 2d, Records and Recording Laws § 38.
What constitutes "trade secrets and commerical or financial infor-
mation obtained from a person and privileged or confidential,"
exempt from disclosure under Freedom of Information Act (5
USCS § 552(b)(4)). 21 ALR Fed 224.

hearing officer to provide the intervenors with full access to the information contained in the rate filing with the provision that there would be no public disclosure, in accordance with Judge Harrison's temporary restraining order. The intervenors both filed emergency appeals with the commissioner, objecting to the provision prohibiting public disclosure. The commissioner affirmed the order of the hearing officer. The order prohibiting public disclosure was further expanded to cover materials provided as part of the discovery process of the rate proceedings. The intervenors filed a complaint in Ingham Circuit Court seeking declaratory and injunctive relief from the restrictions imposed by the hearing officer. BCBSM was later added as an intervening defendant. A second temporary restraining order and an order to show cause were issued prohibiting the defendants from directing the intervenors to file their direct cases in the rate proceeding until further order of the court, James T. Kallman, J. On August 11, 1978, the hearing officer issued an order rescinding the earlier restrictions on disclosure and declaring that materials submitted in the rate proceeding would be available for public inspection. The Commissioner of Insurance affirmed the order. BCBSM sought appellate relief in the circuit court, which stayed the commissioner's order, James T. Kallman, J. Subsequent review by the court resulted in an order permitting disclosure of BCBSM documents. The commissioner and the Insurance Bureau appealed and filed a motion for stay of the circuit court's order. Michigan Citizens Lobby cross-appealed and moved for a stay of the circuit court order. The motions to stay were denied. Michigan Citizens Lobby dropped its prior FOIA request to the Insurance Bureau and submitted a discovery request for information accompanying the 1980 rate increase petition. BCBSM objected to this request but the circuit court refused to restrain the Insurance Bureau from responding to the request. BCBSM then filed a withdrawal of request seeking to withdraw the 1978 rate increase petition from consideration of the Insurance Bureau. BCBSM thereafter submitted a new rate increase petition supported by new rating material. The commissioner refused to dismiss the 1978 proceedings and treated the 1980 submissions as updated information amending the 1978 petition information. BCBSM appealed to the circuit court which entered an order directing dismissal of the 1978 petition and prohibiting public disclosure of rating information previously filed in connection with the 1978 rate increase petition. The commissioner issued a written stay of the 1978 and 1980 rate cases. Thereafter, Judge Kallman ordered the commissioner to redocket all pleadings relating to the 1980

rate case and vacated the commissioner's stay. Appeals by the parties to the Court of Appeals resulted in a stay of the circuit court's order dismissing the 1978 rate case and consolidation of the separate petitions. The parties were directed to address the following questions on appeal: 1) whether the appeal on the secrecy question would be rendered moot if the dismissal of the 1980 rate request were to be upheld, 2) whether the circuit judge had the power to prohibit public disclosure of information he had previously ruled was subject to the FOIA, 3) whether the FOIA applies to information submitted by BCBSM pursuant to the 1980 rate increase request, and 4) whether a decision on the FOIA question would govern rate proceedings newly commenced in 1980. *Held:*

1. The secrecy question would not be rendered moot if dismissal of the 1980 rate request were to be upheld because the issue of secrecy raised by BCBSM's rate request is a matter of continuing interest to the public and will most certainly arise in future rate increase proceedings.

2. Information targeted for public scrutiny may be revealed despite a claim of exemption by the affected party. The decision to deny disclosure of exempt information is one committed to the agency's discretion and should not be disturbed unless an abuse of discretion is found. The lower court erred in its order prohibiting public disclosure of the disputed rating formulae.

3. The purpose of the FOIA is to provide to citizens full and complete information regarding the workings of state government and public officials and employees. The Legislature enacted two statutory provisions requiring disclosure of public records and records obtained in the course of contested administrative cases. The first requires an oral or written request by the person seeking the public record and the second requires the publication of final orders or decisions in contested cases and the records on which they were made unless specifically exempted by the FOIA. Thus, unless made exempt by another provision of the act, the Insurance Bureau is required to make available for public consumption those documents submitted by BCBSM in support of its contested rate adjustment petition. The information filed by BCBSM is not exempt as a trade secret because there is no evidence of any policy of nondisclosure or disclosure conditioned on a promise of confidentiality by BCBSM. A competitor could acquire BCBSM's rating formulae without substantial difficulty by direct contact with individual subscriber groups covered by BCBSM policies. BCBSM's information does not constitute a nondisclosable trade secret because readily ascertainable information cannot be a trade

secret. Notwithstanding the above, even if the information did comprise a trade secret, it would not be exempt from disclosure because information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit is not subject to exemption. BCBSM enjoys substantial government benefit and its rate increase petition here was an attempt to acquire a further government benefit. The circuit court's order requiring in part disclosure of documents submitted by BCBSM is affirmed. The aspect of the order prohibiting public disclosure of information subject to FOIA disclosure is reversed.

4. The disposition of question 3 makes consideration of question 4 unnecessary.

Affirmed in part and reversed in part.

1. APPEAL — MOOTNESS.

The mootness doctrine has a public interest exception which permits review where the issues involved are of continuing public interest and are capable of repetition.

2. ADMINISTRATIVE LAW — STATE AGENCIES — DISCLOSURE OF INFORMATION — STATUTES.

It is the uncontested duty of a state agency to release final orders or decisions in contested cases and the records on which they were made (MCL 15.241[1][a]; MSA 4.1801[11][1][a]).

3. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — APPEAL.

Information targeted for public scrutiny under the Freedom of Information Act may be revealed despite a claim of exemption by the affected party; the decision to deny disclosure of exempt information is one committed to the discretion of the agency involved and should not be disturbed unless an abuse of discretion is found.

4. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — STATUTES.

The purpose of the Freedom of Information Act is to provide to citizens full and complete information regarding the workings of state government and public officials and employees (MCL 15.231[2]; MSA 4.1801[1][2]).

5. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — TRADE SECRETS — NONCONFIDENTIAL INFORMATION.

Information submitted to the Insurance Bureau in support of a request for a rate hike is not subject to exemption from public disclosure under the Freedom of Information Act as a trade

secret where competitors of the party seeking nondisclosure can acquire the information sought to be exempted without substantial difficulty by direct contact with the individual subscriber groups covered by policies issued by the party seeking nondisclosure.

6. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — TRADE SECRETS — STATUTES.

The provision of the Freedom of Information Act which exempts trade secrets from public disclosure does not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit (MCL 15.243[1][g][iii]; MSA 4.1801[13][1][g][iii]).

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen D. Schultz, William K. Fahey* and *Theodore W. Swift),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *E. John Blanchard,* Assistants Attorney General, for defendant Commissioner of Insurance.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for defendant Attorney General.

*Alan J. Barak,* for defendant Michigan Citizens Lobby.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

M. J. KELLY, J.

## PROCEDURAL BACKGROUND

If it is permissible to begin with parentheses I

---

* Circuit judge, sitting on the Court of Appeals by assignment.

do so by suggesting that the casual reader skip the first 14 paragraphs as the information contained therein is informative only to the tribunals saddled with these tasks and the parties.

These procedurally complex appeals arise from two unrelated proceedings involving documents submitted by plaintiff Blue Cross and Blue Shield of Michigan (Blue Cross) to defendant Commissioner of Insurance, which were sought for public disclosure under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.;* MSA 4.1801 *et seq.* The proceedings in case number 46857 eventually resulted in an August 6, 1979, order of Ingham County Circuit Court Judge James Kallman exempting from disclosure documents submitted by Blue Cross prior to August 11, 1978, but finding disclosable those documents submitted thereafter. The later appeals resulted from subsequent orders of the same court dismissing the first of two rate increase petitions filed with the Insurance Bureau by plaintiff.

These convoluted proceedings began in mid-1977, when the Insurance Bureau of the Department of Commerce informed Blue Cross of two competing insurers' FOIA requests for data previously filed by Blue Cross. On August 17, 1977, Blue Cross filed suit in Ingham County Circuit Court seeking to prevent public disclosure of the information. The following day, Circuit Judge Michael G. Harrison issued a temporary restraining order which prohibited the bureau from:

"releasing to the public the rating information submitted by BCBSM to the Bureau * * *, until further order of this Court."

The parallel proceeding began when Blue Cross sought rate changes in accordance with materials

filed for the approval of the Commissioner on March 3, 1978. On May 8, 1978, the Commissioner ordered a hearing to consider whether Blue Cross carried its statutory burden of justifying proposed rate changes. Carolyn Stell was appointed as hearing officer. On May 5, 1978, the Michigan Citizens Lobby filed a formal written request to intervene in the rate proceeding and on May 18, 1978, the Attorney General gave notice of intervention as a matter of right.

On May 30, 1978, hearing officer Stell issued an order granting intervenor status to the Michigan Citizens Lobby and the Attorney General. The order directed Blue Cross to provide the intervenors full access to the data contained in the rate filing and further directed the intervenors to agree to the same restraints imposed on the bureau by Judge Harrison's temporary restraining order—no public disclosure.

The Attorney General and Citizens Lobby then filed emergency appeals with the Commissioner objecting to the provision requiring them to abide by the restraining order. On June 9, 1978, the Commissioner issued an order affirming the May 30 order. The order indicated that until clarification was provided regarding the applicability of the prior temporary restraining order a broad reading of the judicially imposed restriction was required. The order also stated that the hearing officer's decision was supported by her power to regulate the course of the hearing under § 80 of the Michigan Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* On June 29, 1978, the Commissioner reaffirmed the hearing officer's May 30 order. On July 13, 1978, hearing officer Stell issued an order stating that the provisions of the May 30 order, which had applied to

the rate filing, also applied to materials provided as part of the discovery process.

In a complaint dated July 19, 1978, the intervenors sought declaratory and injunctive relief from the restrictions imposed by the hearing officer in her May 30 and July 13 orders. Blue Cross was later added as an intervening defendant. The case was assigned to Circuit Judge James T. Kallman, who issued a second temporary restraining order and order to show cause on August 1, 1978, prohibiting the defendants from "directing the intervenors to file their direct cases in [the] rate proceeding until further order of the court".

Prior to the admission of the intervenors in the rate proceeding, the hearing officer had issued an order requiring the parties to petition the Ingham County Circuit Court for clarification of the August 18, 1977, temporary restraining order. Blue Cross filed objections to this order on May 22, 1978, and never obeyed it. On the same date, the Insurance Bureau filed a motion for clarification as directed. A hearing was held on July 7, 1978, which ended without resolution of the question.

A second hearing on the clarification motion was held on August 2, 1978, before Judge Harrison, which resulted in an order denying the motion. Judge Harrison also made the following statement regarding his 1977 temporary restraining order:

"* * * I do not feel that I have any jurisdiction now that all of those issues coming out of that action are before Judge Kallman * * * I think now clearly the issue is before Judge Kallman as to the contested action which is currently going on, and to the procedures which are to be followed.

* * *

"In other words, as far as I am concerned, the Administrative Procedures Act is there, hearings are to be

conducted in accordance with the Administrative Proce-
dures Act, and my ruling had—*my Temporary Re-
straining Order had no effect whatsoever on hearings
conducted pursuant to that Act."* (Emphasis added.)

The emphasized statement was not, however, in-
corporated into the written order denying the
motion for clarification.

On August 9, 1978, the Insurance Bureau filed
with the hearing officer a motion for reconsidera-
tion of the May 30 and July 13 orders, based upon
the oral comment of Judge Harrison. On August
11, 1978, following a conference telephone call,
hearing officer Stell issued an order rescinding the
earlier restrictions on disclosure and declaring
that materials submitted in the rate proceeding
would be available for public inspection. The order
gave Blue Cross a five-day grace period to seek
further clarification of Judge Harrison's restrain-
ing order. Blue Cross immediately filed an emer-
gency appeal with the Commissioner, who stayed
the August 11th order pending the outcome of the
appeal. However, on August 25, 1978, the Commis-
sioner affirmed the hearing officer's August 11
order.

In response to the Commissioner's adverse rul-
ing, Blue Cross sought appellate relief in the cir-
cuit court by filing motions for leave to appeal,
immediate consideration and for a stay of the
administrative order. On August 29, 1978, Judge
Kallman stayed the Commissioner's order. After a
hearing on the disclosure question, Judge Kallman
remanded the case to the hearing officer for an
evidentiary hearing. On March 14, 1979, hearing
officer Stell issued her proposed opinion recom-
mending public disclosure of Blue Cross documents
submitted in the rate proceeding. On March 30,
1979, the Commissioner issued an opinion and

final order adopting the hearing officer's recommendations. Subsequent review of the Commissioner's opinion and order by Judge Kallman resulted in the August 6, 1979, order permitting disclosure of Blue Cross documents filed after August 11, 1978.[1]

On August 27, 1979, the Commissioner and Insurance Bureau filed a claim of appeal in this Court, accompanied by a motion for stay of the circuit court's order. Michigan Citizens Lobby cross-appealed on September 14, 1979, and also moved for a stay of the lower court order. We denied the motions to stay on September 7 and October 23, 1979, respectively. In the interim, Blue Cross moved to dismiss the appeal of right. On October 23, 1979, we dismissed the appeal of right but granted leave to appeal.

On January 3, 1980, prior to a decision by this Court, Michigan Citizens Lobby dropped its prior FOIA request and submitted a discovery request for information accompanying the 1980 rate increase petition. The same day, by telegram, Blue Cross notified the hearing officer of its objection to the discovery request. On January 4, 1980, Ingham County Circuit Court Judge Michael Harrison refused to restrain the Insurance Bureau from responding to the previous day's request. Later that day, Blue Cross filed with the Bureau a "Withdrawal of Request", seeking to withdraw from consideration the 1978 rate increase petition.

Thereafter, on March 3, 1980, Blue Cross submitted a new rate increase petition, supported by new rating materials pertaining to area rated

[1] The parties at oral arguments conceded that the information submitted prior to August 11, 1978, was obsolete and had been acquired by the defendants in any event. We thus confine ourselves to the issue of disclosure of those documents filed with the Commissioner of Insurance after that date.

group subscribers. The information so submitted was said to replace that filed with the 1978 petition. In two subsequent opinions and orders released February 25 and April 8, 1980, respectively, the Commissioner refused to dismiss the 1978 proceedings and treated the additional 1980 submissions as updated and supportive information amending the earlier filing. Blue Cross then sought appeal of the Commissioner's orders in the circuit court.

On June 16, 1980, Judge Kallman entered an order directing dismissal of the 1978 petition and prohibiting public disclosure of rating information previously filed:

"NOW, THEREFORE, IT IS THE ORDER of this Court that the March 3, 1978, rate request of BCBSM, Insurance Bureau case number 78-1163-R, be dismissed without prejudice.

"IT IS FURTHER ORDERED that no person, organization or party to this action shall release information submitted by BCBSM in pursuance of the March 3, 1978, rate case to any other party or member of the public."

On July 7, 1980, in response to the circuit court's order, the Insurance Commissioner issued a written stay of the 1978 and 1980 rate cases. Thereafter, on July 16, 1980, Judge Kallman ordered the Commissioner to redocket all pleadings relating to the 1980 rate case and vacated the Commissioner's stay.

## ISSUES AND ANSWERS

Subsequent appeals by the parties resulted in our issuance of several orders, including a stay of the circuit court's order dismissing the 1978 rate case and consolidation of the separate petitions.

We also directed the parties to address the following questions:

"1. Whether the appeal on the secrecy question would be rendered moot if the dismissal of the 1980 rate request is upheld.

"2. Whether the circuit judge had the power to prohibit public disclosure of information he had previously ruled was subject to the MFOIA.

"3. Whether the MFOIA applies to information submitted by BCBSM pursuant to the 1980 rate increase request.

"4. Whether a decision on the MFOIA question in appeal No. 46857 would govern rate proceedings newly commenced in 1980."

The parties agree as to the first question that if dismissal of the 1980 rate request is upheld the secrecy question would not thereby be rendered moot. The issue of secrecy raised by Blue Cross's rate request is a matter of continuing interest to the public and will most certainly arise in future rate increase proceedings. Thus, the instant appeal is not moot. *Great Lakes Steel Division of National Steel Corp v Public Service Comm,* 94 Mich App 694, 700, fn 2; 290 NW2d 54 (1980).

The second question posed above has not been specifically addressed in prior decisions. It is the uncontested duty of a state agency to release "[f]inal orders or decisions in contested cases and the records on which they were made". MCL 15.241(1)(a); MSA 4.1801(11)(1)(a). In *Tobin v Civil Service Comm,* 98 Mich App 604; 296 NW2d 320 (1980), we addressed the authority of a state agency to release government records over the objection of individuals desiring continued secrecy. The Court held:

"Notably absent from the FOIA universe is a class of

public records that must be preserved from disclosure. It is not possible to interpret public bodies' privilege to refuse disclosure of exempted materials as an obligation to protect those records from public view. The act itself demonstrates the Legislature's ability to distinguish between 'may' and 'shall'. See also *Arnold v Ellis,* 5 Mich App 101; 145 NW2d 822 (1966), and *King v Director of the Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977). *We reach the inescapable conclusion that the FOIA does not compel a public body to conceal information at the instance of one who opposes its release. Cf. Chrysler Corp v Brown,* 441 US 281; 99 S Ct 1705; 60 L Ed 2d 208 (1979)." (Emphasis added.) *Id.,* 608.

Thus, there is an exercise of discretion involved. A state agency may choose to reveal information even if there are competing interests. In *Tobin,* the agency was required to weigh its employees' privacy interests against the public purpose of openness and disclosure. Additionally, § 78(2) of the Michigan Administrative Procedures Act, MCL 24.278(2); MSA 3.560(178)(2), limits the availability of informal dispositions in contested cases:

"Except as otherwise provided by law, disposition may be made of a contested case by stipulation, agreed settlement, consent order, waiver, default or other method agreed upon by the parties."

Read together, the two statutory provisions prohibit agency adjudications from fiat by a single party. Such unilateral control would substantially inhibit attainment of the public policy goals underlying the FOIA, specifically the entitlement of all persons to "full and complete information regarding the affairs of government" and public officials. MCL 15.231(2); MSA 4.1801(1)(2). The exceptions from full disclosure, embodied in MCL 15.243; MSA 4.1801(13), declare that information targeted

for public scrutiny may be revealed despite a claim of exemption by the affected party. The decision to deny disclosure of exempt information is one committed to the agency's discretion, *Tobin v Civil Service Comm, supra,* which decision should not be disturbed unless an abuse of discretion is found. The dismissal here by the lower court serves only as a judicial attempt to limit the discretion granted to agencies by the Legislature. In light of the legislative intent, the lower court erred in its order prohibiting public disclosure of the disputed rating formulae.

We next address the question of applying the Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801 *et seq.,* to disclosure of the identified documents.[2] Plaintiff, Blue Cross, argues that application of the FOIA disclosure provisions is barred because no specific request for the documents has been made. Instead, Blue Cross says, the circuit court should have applied the common law balancing of the interests analysis governing inspection of public records. *Nowack v Auditor General,* 243 Mich 200; 219 NW 749 (1928). Under this test, a person seeking access to records held by the state would have to prove a "special interest" warranting receipt of the documents. *Burton*

[2] Plaintiff's brief in appeal No. 46857 summarizes the disputed information as:

"(a) Merit rating formulae and experience rating system formulae and any component parts thereof.

"(b) Area rated group adjustment factors, monthly and area, and any other factors which are components of this rating formulae.

"(c) BCBSM's ratio of obligations to provider (hospital and physician) charges and all information concerning provider reimbursement which BCBSM has not released to providers.

"(d) Reserve and trend studies and working papers, but limited only to issues relating directly to component factors of rating formulae, and work papers which show the application of specific factors to basic corporate data, or which provide for the derivation of factors from basic corporate data, and development of trend factors and rates for new or special products."

*v Reynolds,* 110 Mich 354; 68 NW 217 (1896), *Nowack v Auditor General, supra.* We disagree and find the documents submitted by Blue Cross in support of both petitions to be public records subject to disclosure under the FOIA.

The expressed purpose of the FOIA is to provide to citizens full and complete information regarding the workings of state government, public officials and employees. MCL 15.231(2); MSA 4.1801(1)(2). To facilitate this goal, the Legislature enacted two statutory provisions requiring disclosure of public records and records obtained in the course of contested administrative cases. The first of these provisions, MCL 15.233; MSA 4.1801(3), requires an "oral or written request" by the person seeking the public record to trigger an agency's duty to permit inspection or examination of publicly held documents. The second provision, MCL 15.241(1)(4); MSA 4.1801(11)(1)(4), focuses on records developed or submitted pursuant to administrative adjudications:

"(1) A state agency shall publish and make available to the public all of the following:

"(a) Final orders or decisions in contested cases and the records on which they were made.

\* \* \*

"(4) This section does not apply to public records which are exempt from disclosure under section 13 [MCL 15.243; MSA 4.1201(3)]."

In contrast to § 3, this provision does not require a specific oral or written request. Thus, unless made exempt by another provision of the act, the Insurance Bureau is required to make available for public consumption those documents submitted by

Blue Cross in support of its contested rate adjustment petition.[3]

Section 13 of the Freedom of Information Act, MCL 15.243; MSA 4.1801(13), contains the exemptions referred to above. Pertinent to the instant case is the discretionary exemption for trade secrets embodied in MCL 15.243(1)(g); MSA 4.1801(13)(1)(g):

"A public body may exempt from disclosure as a public record under this act:

*     *     *

"(g) Trade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy if:

"(i) The information is submitted upon a promise of confidentiality by the public body.

"(ii) The promise of confidentiality is authorized by the chief administrative officer of the public body or by an elected official at the time the promise is made.

"(iii) A description of the information is recorded by the public body within a reasonable time after it has been submitted, maintained in a central place within the public body, and made available to a person upon request. This subdivision shall not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit."

The main issue raised in this appeal concerns the claim of Blue Cross that its information consti-

---

[3] In so holding, we distinguish this Court's decision in *Rehabilitation Center, Inc v Blue Cross & Blue Shield of Michigan,* 93 Mich App 357; 287 NW2d 236 (1979), *lv gtd* 408 Mich 898 (1980), which held that the lack of an evidentiary hearing requirement in MCL 550.503; MSA 24.623 took a rate increase determination out of the Administrative Procedure Act's definition of a "contested case", MCL 24.203(3); MSA 3.560(103)(3). Although § 11(6) of the FOIA, MCL 15.241(6); MSA 4.1801(11)(6), specifically adopts the APA definition of "contested case" an evidentiary hearing was in fact held in this case. We thus find that the agency proceeding below was a contested case subject to the disclosure requirements of § 11 of the FOIA.

tutes a trade secret, exempt from FOIA disclosure under the above provision. In *Kubik, Inc v Hull,* 56 Mich App 335, 347-348; 224 NW2d 80 (1974), this Court summarized several previous discussions of trade secrets and found three "generalizations" applicable to define the term:

"(1) A trade secret consists of any valuable formula, pattern, device, process or other information that is used in one's business and gives the possessor a competitive advantage over those who do not know or use the information.

"(2) To be a trade secret, the information must, of necessity, be a *secret;* specifically, there must be evidence presented that sufficient measures have been taken to guard the secrecy of the information and preserve its confidentiality. Such measures generally include either an express agreement between the employer and employee restricting or prohibiting disclosure by the latter to third parties; a disclosure by employer to employee in confidence or with a tacit understanding, inferable from the attendant circumstances, that the information is confidential; or security precautions utilized by the employer to insure that only a limited number of authorized individuals have access to the information.

"(3) The term 'trade secret' does not encompass information which is readily ascertainable, *i.e.,* capable of being acquired by competitors or the general public without undue difficulty or hardship."

See also the Restatement of Torts, § 757, Comment B, p 6, quoted by the *Kubik* Court and the similar definitions of "trade secret" embodied in the Michigan Occupational Safety and Health Act, MCL 408.1006(7); MSA 17.50(6)(7), and criminal trade secrets act, MCL 752.771(3); MSA 28.643(51)(3).

In her decision finding no trade secret, hearing officer Stell applied the *Kubik* definition and focused primarily on the failure of Blue Cross to

sufficiently limit dissemination of its data. The hearing officer wrote:

"BCBSM claims that disclosure of certain selective information (including operating expenses of a hospital, the Blue Cross contract and noncontract charges, the Blue Cross initial payment to hospitals, the per diem cost information, and the adjusted per diem cost) to hospitals and to MHA 'do[es] not compel a conclusion that BCBSM's trade secrets have thereby become public information, since such disclosures have been made upon a promise of confidentiality by the recipients of that information.' (BCBSM Posthearing Brief, p 47, based upon the written direct testimony of BCBSM witness, Mr. Asmussen.) Mr. Asmussen further testified on cross-examination that 'that same information is provided to the Insurance Bureau without specific identification of hospitals, and also to the Michigan Hospital Association in the same format. But in no case do we identify specific hospitals in that transmission.' (Transcript, p 264.) When shown a copy of the *Report of Participating Hospitals (Report)* previously filed with the Bureau by BCBSM, Mr. Asmussen acknowledged that his previous testimony had been incorrect in that the copy of the *Report* filed with the Bureau included an index by which one could identify the specific hospitals. (Transcript, pp 265-266.)

\* \* \*

"BCBSM witness Mr. Lutz testified on cross-examination that a group may be told the operation of the merit rating formula, its credibility factor, its administrative expense factor, its risk factor, its reserve factor, and its conversion factor. They may be told these factors for each line of coverage, although Mr. Lutz modified this by saying it would be 'on rare occasion'. However, he testified that BCBSM does not elicit a promise of confidentiality with respect to the disclosed factors from the group. (Transcript, pp 91-92.) Mr. Lutz further testified that 'Groups are entitled to know how they are rated, and specifically in response to your question, Formula I groups are provided with a copy of a formula. That is

their right. Who they give it to is their business.'
(Transcript, p 100.)"

Our review of the record indicates that the
hearing officer accurately summarized the testi-
mony supporting Blue Cross' claim of secrecy. It is
apparent that this testimony does not suggest a
policy of nondisclosure or disclosure conditioned on
a promise of confidentiality. *Manos v Melton*, 358
Mich 500, 508; 100 NW2d 235 (1960). A competitor
could acquire the information comprising the
plaintiff's rating formulae without substantial diffi-
culty by direct contact with individual subscriber
groups covered by Blue Cross policies. *Kubik, Inc v
Hull, supra.* Plaintiff's claim that its groups rarely
request detailed rating formulae and that obtain-
ing all of the elements of its rating system would
require a substantial effort may be true, but it
may signal the frailty of competition more than
hearty satisfaction. The testimony discloses no
attempt by Blue Cross to preserve the confidential-
ity of its rating standards. It appears the data
sought to be protected could be easily ascertaina-
ble by the plaintiff's competitors. *Insealator, Inc v
Wallace*, 357 Mich 233, 250; 98 NW2d 643 (1959).
See also *Russell v Wall Wire Products Co*, 346
Mich 581, 590-591; 78 NW2d 149 (1956), citing
Ellis on Trade Secrets, § 244, p 330, for the notion
that a "readily ascertainable" idea could not be a
trade secret. Plaintiff's data does not constitute a
nondisclosable trade secret. Because the Supreme
Court will undoubtedly be called upon to review
this already too long opinion, we offer the addi-
tional analysis that inevitably begins with the
crippling preposition "if". If the data were trade
secrets, the last sentence of (iii) above would ap-
pear to prohibit even the pressing of the claim by
BCBSM. We repeat the sentence here:

"This subdivision shall not apply to information sub-mitted as required by law or as a condition of receiving a governmental contract, license, or other benefit." MCL 15.243(1)(g)(iii); MSA 4.1801(13)(1)(g)(iii).

The statutes governing the services offered by Blue Cross indicate several purposes related to government licensing and benefits for submitting the disputed information to the Insurance Bureau. Initially, any business organized under the act authorizing nonprofit medical care organizations is subject to the original approval and continuing regulation and supervision by the Commissioner of Insurance, MCL 550.302; MSA 24.592, MCL 550.501; MSA 24.621. Secondly, the rates to be charged to individual or group subscribers are subject to the Commissioner's approval, MCL 550.503; MSA 24.623. Also, Blue Cross enjoys the tax exempt status of a "charitable and benevolent institution". MCL 550.315; MSA 24.605, MCL 550.515; MSA 24.635, *Blue Cross & Blue Shield of Michigan v Ins Comm'r,* 403 Mich 399; 270 NW2d 845 (1978). Finally, when the Legislature autho-rized consolidation of Blue Cross and Blue Shield, it specifically made the corporation so created subject to regulation identical to its premerger status. MCL 550.309a; MSA 24.599(1), MCL 550.503b; MSA 24.623(2).

We are persuaded that Blue Cross enjoys sub-stantial government benefit. Its unique position in the health care field results from the Legislature's desire to provide comprehensive medical services at low cost to subscribers, a goal made possible by Blue Cross' position as a tax exempt, nonprofit organization. As a precondition of special status, Blue Cross is not permitted to raise its subscriber rates without the Commissioner's approval. It is our conclusion that the Blue Cross rate increase

petition herein was an attempt to acquire a further government benefit. Therefore, even if the data submitted by Blue Cross constituted a trade secret or protected commercial or financial information, the statutory exemption from disclosure would not protect such information from FOIA disclosure.[4]

The circuit court's order requiring in part disclosure of documents submitted by Blue Cross after August 11, 1978, is affirmed. That aspect of the lower court's order of June 16, 1980 prohibiting public disclosure of information subject to FOIA disclosure is reversed.

Affirmed in part; reversed in part.

---

[4] Our disposition of question 3 dispenses with the necessity of considering question 4. Instead, we note the similarity of information submitted supporting the respective petitions. Additionally, review of the record does not suggest the presence of trade secrets or other exempt matters relating to the 1980 rate request. Thus, a decision in No. 46857 would apply with great force to the latter petition.