**HOSKINS MANUFACTURING COM-PANY and Hoskins Thermal Systems, Plaintiffs,**

v.

**PMC CORPORATION, William Minnis, Edward Valykeo, and Robbin Valykeo, Defendants.**

No. Civ.A. 98–40088.

United States District Court, E.D. Michigan, Southern Division.

April 19, 1999.

William G. Abbatt, Brooks & Kushman, Southfield, MI, for plaintiffs.

John H. Dudley, Jr., Butzel Long, Detroit, MI, Charles A. Szypszak, Orr & Reno, Concord, NH, Richard B. Couser, Orr & Reno, Concord NH, for PMC Corporation, defendants.

### MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDG-MENT PURSUANT TO FED. R.CIV.P. 56

GADOLA, District Judge.

Before the court is a motion by defendants, PMC Corporation ("PMC"), William Minnis, Edward Valykeo and Robbin Valykeo, for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, this court will grant defendants' motion.

### Factual Background

Plaintiffs, Hoskins Manufacturing Company and Hoskins Thermal Systems (collectively "Hoskins"), manufacture several products used to measure extremely high temperatures. One of Hoskins' products, mineral insulated ("MI") cable, is the primary subject of dispute in the instant case. Hoskins alleges that it has developed, at great cost to itself, a high purity magnesium oxide powder which is specially processed and used by Hoskins as insulation in the manufacture of Hoskins MI cable.

Defendant PMC Corporation ("PMC") is a competitor of Hoskins. Though it has not always produced MI cable, it has begun recently· to produce MI cable and PMC has aggressively marketed its intention to become a premium producer of MI cable. The individual defendants, William Minnis, Edward Valykeo and Robbin Valykeo, are all former employees of Hoskins that now work for PMC.

Essentially, Hoskins claims that PMC lured Minnis and the Valykeos away from Hoskins in order to gain an unfair competitive advantage in the MI cable market. Hoskins alleges that Minnis and the Valykeos are in possession of certain trade secrets related to the manufacturing process employed by Hoskins to fabricate MI cable. Moreover, Hoskins alleges that PMC has obtained, or will inevitably obtain, confidential information and/or trade secrets from the individual defendants in this case, enabling PMC to reap an unfair competitive advantage in the market for MI cable.

Hoskins filed the instant complaint on March 6, 1998, alleging breach of fiduciary duty (Count I), breach of contract (Count II), interference with contractual relations (Count III), misappropriation of trade secrets (Count IV), Unfair competition (Count V), and civil conspiracy (Count VI). On May 8, 1998, Hoskins filed a motion for preliminary injunction seeking to enjoin PMC from competing directly or indirectly with Hoskins in the MI cable market for a period of three years. Hoskins also sought to enjoin the individual defendants from continuing their employment with PMC (or accepting any employment from another competitor of PMC) for a period of three years, and from disclosing any of Hoskins' proprietary trade secrets. Hoskins argued that it was entitled to a preliminary injunction because disclosure of trade secrets was "inevitable" under the circumstances of this case. Specifically, Hoskins contended that PMC is a direct competitor of Hoskins engaged in the production of MI cable, and that the individual defendants, who had intimate knowledge of the Hoskins MI cable manufacturing process, are now working in MI cable production at PMC.

On August 7, 1998, this court entered a memorandum opinion and order denying in part and granting in part plaintiff's motion

for preliminary injunction. This court found that the evidence before the court at that time suggested that PMC would not necessarily use, and the individual defendants would not necessarily disclose, any confidential information or trade secrets misappropriated from Hoskins. This court noted that there appeared to be significant differences between the MI cable manufacturing processes of Hoskins and PMC. This court went on to hold that Hoskins had not produced sufficient evidence of a substantial imminent threat of disclosure of confidential information or trade secrets to warrant the issuance of an injunction to prevent the individual defendants from continuing their employment with PMC, or to prevent PMC from competing with Hoskins in the MI cable market. This court did, however, enter an injunction specifically prohibiting the individual defendants from disclosing any trade secret, confidential information or proprietary information of Hoskins in connection with MI cable for a period of three years.

On October 26, 1998, defendants filed the instant motion for summary judgment. In response to the motion for summary judgment, Hoskins essentially admitted that it was unable to present any specific evidence of the disclosure and/or use by defendants of any of Hoskins' confidential information or trade secrets. Hoskins did ask this court, however, to order a continuance, pursuant to Fed.R.Civ.P. 56(f), to permit Hoskins to conduct additional discovery. On December 15, 1998, this court entered a memorandum opinion and order granting that request and taking the motion for summary judgment under advisement to allow Hoskins to depose a number of additional witnesses. This court also ordered the parties to file supplemental briefs after the additional discovery had been taken.

Hoskins has now had an opportunity to conduct its additional discovery, and the parties have submitted their supplemental briefs. Accordingly, defendants' motion for summary judgment is ripe for adjudication.

## Discussion

### 1. Motion for summary judgment pursuant to Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir. 1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir. 1994). A dispute over a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) *aff'd,* 929 F.2d 701 (6th Cir.1991).

### 2. Analysis

The gravamen of defendants' motion for summary judgment is that Hoskins has failed to produce any evidence that there has been an actual misappropriation of any confidential information or trade secrets in this case. Defendants contend that proof of disclosure and/or use of Hoskins' confidential information or trade secrets by defendants is an essential element of each of Hoskins' claims in this case. Accordingly, defendants assert that, because Hoskins has failed to produce a genuine issue of material fact with respect to the alleged disclosure and/or use of any confidential information or trade secrets, defendants are entitled to summary judgment on each of the claims asserted in the complaint.

Hoskins continues to argue, as it has throughout the pendency of this litigation, that disclosure of trade secrets in this case is inevitable. PMC is a direct competitor of Hoskins that is engaged in producing MI cable. Moreover, the individual defendants had intimate knowledge of the Hoskins manufacturing process and they are working with the MI cable manufacturing process at PMC. Under these circumstances, Hoskins asserts that disclosure of its trade secrets related to its MI cable manufacturing process is inevitable. Accordingly, Hoskins argues that it has produced sufficient evidence of disclosure and/or use of trade secrets to establish a genuine issue of material fact with respect to each of its claims in this case.

In support of its claim that disclosure is inevitable, Hoskins cites *Allis–Chalmers Mfg. Co. v. Continental Aviation and Eng'g Corp.,* 255 F.Supp. 645 (E.D.Mich. 1966). In *Allis–Chalmers,* the court upheld a non-compete provision in an employment contract when an employer sued an ex-employee who had gone to work for a direct competitor in the same field. Finding a substantial threat of misappropriation of trade secrets, the court held:

> The virtual impossibility of [the ex-employee] performing all of his prospective duties for [the competitor] to the best of his ability, without in effect giving [the competitor] the benefit of [the employer's] confidential information, makes a simple injunction against disclosure and use of this information inadequate.

*Id.* at 654. Here, Hoskins asserts that there are similar circumstances which indi-

**856**

cate that an injunction merely requiring defendants not to disclose confidential information is inadequate. Hoskins also relies on *Emery Indus., Inc. v. Cottier,* 202 U.S.P.Q. 829 (S.D.Ohio 1978). In discussing what constitutes a substantial threat of disclosure, the *Emery* court noted:

> There can be no doubt of the present threat of disclosure in any case in which the transfer of employment is to a head-to-head competitor and the responsibilities in the employments are comparable.

*Id.* at 834. *See also PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir.1995). In the instant case, Hoskins contends that the individual defendants have gone to work for a head-to-head competitor and their responsibilities include working with the MI cable manufacturing process at PMC. Accordingly, Hoskins argues that there is clearly a substantial threat of disclosure of trade secrets in this case.

█ Despite the holdings in *Allis–Chalmers, Emery, PepsiCo* and the other cases cited by Hoskins, this court finds that Hoskins has not established that there is a substantial threat of disclosure of trade secrets in this case. While PMC does manufacture MI cable, Hoskins has still not produced any substantial evidence to counter defendants' assertion, supported by affidavits, that PMC's manufacturing process is markedly dissimilar to that of Hoskins. For instance, rather than fabricating a special magnesium oxide powder insulator itself, PMC purchases pre-fabricated rings of magnesium oxide from outside suppliers and merely assembles the MI cable at its facility. PMC contends that its process mirrors that of a half a dozen other suppliers in the MI cable market. Moreover, PMC contends that its process is similar to Hoskins' process in the same ways that these other competitors' processes are similar to Hoskins' process. As a result, PMC argues that it will have no use for the confidential information that Hoskins seeks to protect in this case.

Against this evidence, Hoskins has not produced any substantial evidence that would suggest that the MI cable manufacturing processes of Hoskins and PMC are substantially similar in any way *that would implicate the confidential information Hoskins is attempting to protect.* Rather, Hoskins relies on conclusory allegations that, because the individual defendants worked with MI cable at Hoskins, they will inevitably use confidential information in their work with MI cable at PMC. Hoskins relies heavily on the deposition testimony of Mr. Minnis, during the course of which Minnis indicates that he designed the PMC MI cable manufacturing process based, in part, on knowledge he obtained during his employment with Hoskins. The specific testimony upon which Hoskins relies is as follows:

Q. How did you figure out what to recommend to PMC by way of an annealing regimen?

A. In my past years with all my employers.

Q. Including Hoskins?

A. That's correct.
    ***

Q. How did you figure [the specific reduction ratio to be used in the reduction step of the MI Cable manufacturing process]?

A. I brought that with me from Gordon Watlow [another manufacturer].

Q. And Hoskins?

A. Yes.
    ***

Q. [H]ow did you know what contour to specify, in the draw—in the drawing die?

A. From my days with Gordon Watlow.

Q. And at Hoskins?

A. Yes.
    ***

Q. Who designed PMC's manufacturing process?

A. I did.

Q. Based on?

A. My knowledge.

Q. Including knowledge acquired at Hoskins. Fair enough?

A. Yes.

(Plaintiffs' Supp.Br. in Resp. to Def.'s Mot. for Summ.J., Ex H at 36–38, 43.)

■ This testimony, however, is insufficient to establish an inevitable disclosure of trade secrets in this case. It is well-settled that "[m]atters of ... general knowledge in the industry ... cannot be trade secrets." *Allis–Chalmers,* 255 F.Supp. at 653; *see also Apollo Tech. Corp. v. Centrosphere Indus. Corp.,* 805 F.Supp. 1157, 1201 (D.N.J.1992). Courts have also noted that, " '[s]ubstantially, a trade secret is known only in the particular business in which it is used.' " *Continental Data Sys., Inc. v. Exxon Corp.,* 638 F.Supp. 432, 442 (E.D.Pa.1986) (quoting Restatement of Torts § 757, comment b (1939)); *see also O.V. Marketing Assoc., Inc. v. Carter,* 766 F.Supp. 960, 966 (D.Kan.1991) (noting that " '[a] line must be drawn between the general skills and knowledge of the trade and information that is peculiar to the employer's business' " (quoting Restatement (Second) of Contracts § 188, Comment (g) at 45 (1981))). Accordingly, to establish that there will be an inevitable disclosure of trade secrets in this case, Hoskins must establish that the information it contends will inevitably be disclosed is information that is peculiar to Hoskins' own business, and not generally known in the industry. Hoskins has alleged, citing the deposition testimony of Mr. Minnis, that the individual defendants in this case will inevitably disclose to PMC certain information related to various components of the MI Cable manufacturing process employed by Hoskins. Mr. Minnis testified, however, that he acquired knowledge throughout his career from a number of manufacturers, including manufacturers other than Hoskins. There is no evidence to suggest that Minnis, or any of the other individual defendants, acquired any knowledge or information *peculiar to Hoskins* that was or will be used in the design or implementation of the MI Cable manufacturing process employed by PMC. The evidence produced by Hoskins merely suggests that, in designing the PMC MI Cable manufacturing process, Minnis used information which constituted general knowledge within the industry.

Though it may be true that Minnis and the Valykeos may have acquired certain knowledge or information related to the special processes of Hoskins during the course of their employment at Hoskins, as the court held in *International Bus. Mach. Corp. v. Seagate Tech., Inc.,* 941 F.Supp. 98, 101 (D.Minn.1992), "[m]erely showing that [an ex-employee now working for a competitor] has knowledge of trade secrets is not enough...." While Hoskins has claimed that disclosure of trade secrets is inevitable, Hoskins has not produced evidence sufficient to create a genuine issue of material fact that PMC will necessarily use, and the individual defendants will necessarily disclose, any confidential information.

Accordingly, that this court will grant defendants' motion for summary judgment on all claims contained in Hoskins' complaint.

This court also notes that, as discussed above, a preliminary injunction was entered in this case on August 7, 1998, enjoining the individual defendants from disclosing any trade secrets of Hoskins for a period of three years. Though this court finds that summary judgment in favor of defendants is appropriate in this case, this court will also order the parties to continue to comply with the terms of that injunction. As this court noted in the context of the motion for preliminary injunction, the two individual defendants with the most intricate knowledge of Hoskins' processes, Mr. Minnis and Mr. Valykeo, signed confidentiality agreements in which they pledged not to divulge the trade secrets at issue in this case. Therefore, an injunction against disclosure of trade secrets for

858

a period of three years appears to the court to be reasonable and appropriate.

Accordingly, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is **GRANTED**, and plaintiffs' complaint is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that the terms of the preliminary injunction entered by this court on August 7, 1998, shall remain in effect until August 7, 2001 or until further order of this court.

**SO ORDERED.**

### *JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiffs, Hoskins Manufacturing Company and Hoskins Thermal Systems, take nothing in this action against defendants, with the exception of the injunctive relief ordered by this court on August 7, 1998. In all other respects, the instant complaint is **DISMISSED** with prejudice.

**SO ORDERED.**