**COMPUWARE CORPORATION,**
Plaintiff,

v.

**SERENA SOFTWARE INTERNATIONAL, INC., Defendant.**

**No. 98–CV–73953.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 30, 1999.

Susan M. Kornfield (P41071), Alan N. Harris (P56324), Bodman, Longley & Dahling LLP, Ann Arbor, MI, for Defendant Serena Software International, Inc.

Anthony J. Rusciano (P29834), Plunkett & Cooney, P.C., Bloomfield Hills, MI, for Plaintiff.

Barbara J. Kovach (P36286), Compuware Corporation, Farmington Hills, MI, for Plaintiff.

William G. Gaede, III, Beatriz Mejia, Cooley Godward LLP, San Francisco, CA, for Defendant Serena Software International, Inc.

Patricia M. Lucas, Stuart P. Meyer, Patrick Premo & Elaine Wallace on Briefs, Fenwick & West LLP, Palo Alto, CA, for Plaintiff.

## ORDER

JULIAN ABELE COOK, JR., District Judge.

On October 19, 1999, the Defendant, Serena Software International, Inc. (Serena), filed a motion, in which it asked this Court to reconsider its Order of October 5, 1999. The challenged Order, which incorporated the conclusions that had been reached by the Court during a hearing on

September 21, 1999, denied Serena's request for the entry of a summary judgment. It had been, and continues to be, Serena's position that the claim for trade secret misappropriation by the Plaintiff, Compuware Corporation (Compuware), must fail for lack of a secret because the allegedly sensitive information had been open for public inspection.[1]

In the present motion, Serena submits that the failure of the Court to rule on the principal legal question in its application for dispositive relief (to wit, whether "trade secret protection [was] lost when Compuware sought copyright registration of its user manuals" and deposited unredacted copies of those manuals for public inspection at the Copyright Office of the United States) constitutes a palpable defect which, if corrected, would produce a different outcome.

Although this Court did not explicitly delineate the contours of its opinion in the Order of October 5, 1999, its central ruling clearly can be inferred from the text.[2] Thus, for the reasons that have been set forth below, the Court disagrees with the arguments that have been advanced by Serena.

## I

This case involves a dispute between the parties as to whether the claim of Compuware, who contends that Serena misappropriated its trade secrets, has any legal efficacy. Compuware develops and licenses proprietary computer systems, including its File–AID products. A copy of each of the File–Aid products at issue here had been submitted to the Copyright Office of the United States for registration prior to the commencement of this litigation.[3] These copies were to be open for public inspection,[4] and, with the exception of certain source codes, none of the material was redacted.[5] Even so, there is no evidence that the products or their contents were known to persons inside or outside of the industry or among the general public during any of the times at issue. There is no evidence that anyone outside of the Compuware corporate structure, its customers, or the Copyright Office viewed the material prior to the commencement of this litigation.[6] On the other hand, there is evidence that Compuware took significant precautionary steps to restrict the publication of its material, including the File–AID products, to its employees and prospective and actual customers.[7] Access to this material was granted by Compuware only if and when the employee or customer executed an agreement which required complete secrecy of the form and content of the materials.[8]

---

1. The same substantive argument has been submitted by Serena in its Motion for Partial Summary Judgment and the present motion.

2. Tr. at 30:9—31:25.

3. Mejia Aff. Ex. 1 [hereinafter "Markman Dep."] at 10:17–20, 11:4–7. Compuware deposited extensive materials bearing the dates July 17, 1995, July 31, 1995, August 3, 1995, and August 21, 1995. (Mejia Aff. Apps. A–G.)

4. According to the policies of the Copyright Office, anyone can request and inspect copies of documents on file during regular business hours.

5. Markman Dep. at 36:13–17, 37:8–17, 38:10–12.

6. Wallace Decl. Ex. A.

7. Galloway Decl. ¶¶ 3–5.

8. Compuware employees can gain access to the File–AID products only after signing two documents, both of which affirm their obligations to maintain the secrecy of the Company's proprietary information. (Galloway Decl. ¶¶ 5–6.) The first document is an employment agreement, which must be signed by the employee and prohibits him/her from (1) "either during or after his [sic] employment with Compuware, disclos[ing] any confidential information or materials of Compuware to any person, firm, corporation, association or other entity for any reason or purpose;" and (2) "us[ing], in any manner other than furthering Compuware's business, any confidential materials of Compuware." (Galloway Decl. Ex. D at 1.) The second document requires the Compuware employee to sign a form, in which he/she (1) acknowledges having received and read the Company's Code of Conduct, and (2) agrees to fully comply with its terms and

## II

In reviewing requests for reconsideration, this Court is guided by the Local Rules which provide, in part, that

> motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication [will not be granted]. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. R. 7.1(g)(3).[9] These Local Rules do not confer procedural rights upon the litigants. Rather, they are judicial rules of self-governance that aid the district courts in handling the docket in an effective and efficient manner. *See Valassis Communications, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir.1996) (citing *United States v. Kingston*, 922 F.2d 1234 (6th Cir.1990)).

Here, the palpable defect, about which Serena complains, allegedly occurred in the disposition of a motion for partial summary judgment. The standards for the entry of a summary judgment are set forth with specificity in Federal Rule of Civil Procedure 56, which permits the entry of such a judicial remedy only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In pursuing its dispositive motion, the burden was on Serena to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This burden would have been satisfied only "if the evidence [was] such that [no] reasonable jury could return a verdict for the nonmoving party." *Id.*[10]

In applying this standard, the Court examined all of the pleadings and evidence in a light that was most favorable to Compu-

conditions. (Galloway Decl. Ex. E. at 5.) According to Compuware, this Code (1) clearly prohibits any unauthorized disclosure of proprietary information, including trade secrets (Galloway Decl. Ex. E at 3.), and (2) defines proprietary information and trade secrets as including "confidential computer technology and programs" and copyrighted materials (Galloway Decl. Ex. E at 3–4.). Compuware also posits that its prospective customers may freely try or evaluate the software and related manuals only if they sign a license agreement that (a) declares, "the Software is the property of and contains trade secrets of COMPUWARE," and (b) requires the customer to "keep in confidence and protect the Software from disclosure to third parties and restrict its use as provided in this Agreement." (Galloway Decl. Exs. A–B.) Under a trial agreement, such customers may try the software for a maximum of thirty (30) days following installation. (Galloway Decl. Ex. A.) Under a software evaluation agreement, the customers may examine the software for a maximum of ten (10) business days. (Galloway Decl. Ex. B.)

Actual customers may use "the proprietary software product(s) and related user manuals" only pursuant to "a non-exclusive, non-transferable, personal license . . . ." (Galloway Decl. Ex. C at 1.) Compuware supplies copies of the user manuals to licensees at no additional charge. (Galloway Decl. Ex. C at 2.) The agreement contains the same proprietary, trade secret and confidentiality language as the agreements for prospective customers. (Galloway Decl. Ex. C at 1.) Additionally, the agreement only allows the customer to use the products internally and proscribes use to provide services to third parties. (Galloway Decl. Ex. C at 1.) The agreement further prohibits the licensee from (1) "mak[ing] or allow[ing] others to make copies or reproductions of the Software in any form" except as expressly authorized by Compuware; and (2) sublicensing, reverse engineering, modifying or creating derivative versions of the software. (Galloway Decl. Ex. C at 1.)

9. A defect is palpable if it is "[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct[ or] manifest." *Black's Law Dictionary* 1110 (6th ed.1990).

10. It is undisputed that (1) Compuware deposited the materials at issue with the Copyright Office and (2) those materials were largely unredacted. Serena sought to obtain a ruling from this Court that these facts, as a matter of law, undermine secrecy. To the extent that this argument failed, Serena was permitted to demonstrate that there was no genuine issue of a material fact as to secrecy.

ware. Fed.R.Civ.P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991). At the same time, it was not the task of this Court "to weigh the evidence and determine the truth of the matter but to determine whether there [was] a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir.1987).

### III

In this motion, Serena contends that a palpable defect was created when its request for the entry of a judgment against Compuware was denied with regard to the misappropriation of trade secrets claim, which arose under the supplemental jurisdiction of the Court in a federal lawsuit for copyright infringement. *See generally* 28 U.S.C. § 1338(b) (1993) (assigning supplemental jurisdiction to federal courts for unfair competition claims—including trade secret misappropriation claims—in federal copyright actions).

Federal copyright law (1) requires every applicant for a copyright to submit a copy of the material to the Copyright Office, *see* 17 U.S.C. §§ 407, 408 (1996), and (2) provides that the submitted copy will be open

11. Serena cited some scholarly treatises which support its argument on the issue of secrecy. (Tr. at 30:15–20.) However, inasmuch as the opinions of several state courts in Michigan counsel otherwise, this Court has rejected Serena's position on this issue. To the extent that Serena's motions have incorporated issues on which the state courts of Michigan have provided more than ample guidance, the scholarly works that have been cited by Serena in support of its current motion will receive no further consideration.

12. In 1998, the Michigan legislature adopted the Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1901—.1910, in an effort "to make uniform the law with respect to the subject of this act among the states enacting it." Mich. Comp. Laws § 445.1909. This Act, without relevant exception, displaced any other prior conflicting tort, restitutionary, or other civil law of Michigan on this issue. Mich. Comp. Laws § 445.1908. Nonetheless, it ap-

for public inspection, *see* 17 U.S.C. § 705(a), (b). The record in this cause suggests that Compuware complied with this federal statutory imperative, but did not request special permission to submit a redacted version of the material. On this issue, it is Serena's contention that the submission of the unredacted material to the Copyright Office constituted a publication which undermined Compuware's claim of secrecy as a matter of law.[11]

■ Compuware's claim for trade secret misappropriation arises out of the laws of the State of Michigan and is independent of its federal claim for copyright infringement. Therefore, Michigan law governs the issue of secrecy—including whether secrecy is vitiated by a deposit with the Copyright Office. In determining the merit, if any, of Serena's argument, this Court looks to the state law of trade secrecy.[12] The parties agree[13] that the leading case in Michigan on the topic of trade secret misappropriation is *Hayes–Albion v. Kuberski*, 421 Mich. 170, 364 N.W.2d 609 (1984).[14]

■ In order to determine the secrecy, if any, of an item of sensitive trade information,[15] Michigan courts have been encouraged to consider the following relevant factors:

plies only to acts of misappropriation that occurred on or after October 1, 1998. Mich. Comp. Laws. § 445.1910.

13. Def.'s Br. Supp. Mot. Recons. at 3; Pl.'s Resp. Br. Mot. Summ. J. at 12.

14. According to *Hayes–Albion*, issues of trade secret misappropriation are frequently factual. *See id.* at 174, 364 N.W.2d 609. Factual issues, of course, are appropriate for trial, but not for the purpose of summary judgment.

15. A precise definition of a "trade secret" is elusive. *See id.* at 181, 364 N.W.2d 609. Nonetheless, such a secret "may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (quoting Restatement of Torts § 757 cmt. b).

(1) the extent to which the information is known outside of [one's] business;

(2) the extent to which it is known by employees and others involved in [one's] business;

(3) the extent of measures taken ... to guard the secrecy of the information;

(4) the value of the information to [one and one's] competitors;

(5) the amount of effort and money expended ... in developing the information; and

(6) the case or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 182, 364 N.W.2d 609 (quoting Restatement of Torts § 757, cmt. b).[16] An examination of Serena's motion for reconsideration involves an analysis of factors (1), (3) and (6).

### A. *Extent Known Outside One's Business*

 Factor (1) seeks to determine the degree to which the information at issue is common knowledge. This factor helps to ensure, among other things, that matters known within an industry will not be classified as secret. *See generally Hoskins Mfg. Co. v. PMC Corp.*, 47 F.Supp.2d 852, 857 (E.D.Mich.1999) ("It is well settled that '[m]atters of general knowledge in the industry ... cannot be trade secrets.' ") (citations omitted).

Although the content of Compuware's materials were not generally known to its competitors, Serena maintains that the submission of the unredacted documents constitutes evidence that the information is publicly known. On the other hand, the evidence in the record indicates that no one other than Compuware employees and licensees actually viewed those materials prior to the commencement of this lawsuit. Therefore, it is reasonable to conclude that

a trier of fact, upon its receipt of this evidence, could find that the challenged information in the case at bar was not generally known to persons outside of Compuware's business despite the presence of a copy at the Copyright Office.

Moreover, even the production of evidence that some members of the public had viewed the challenged documents would not—standing alone—have been dispositive of the issue. "The extent to which information is known by outsiders is but one factor to be considered in determining whether the information is a trade secret." *Hayes–Albion*, 421 Mich. at 185, 364 N.W.2d 609. Additionally, the Court of Appeals of Michigan has held that the limited disclosure of information does not necessarily disrupt secrecy. *See Kubik, Inc. v. Hull*, 56 Mich.App. 335, 359–60, 224 N.W.2d 80, 93 (1974) (Moore, J.). Therefore, factor (1) does not support a finding that a copyright deposit *per se* lacks secrecy. Hence, the Court concludes that no palpable defect occurred in its analysis of factor (1).

### B. *Extent of Measures Taken to Guard Secrecy*

 Factor (3) requires one who seeks protection under the law to make reasonable efforts to keep the material secret. In *Kubik, Inc.*, the Michigan Court of Appeals elaborated:

measures [to guard secrecy] generally include either an express agreement between the employer and employee restricting or prohibiting disclosure by the latter to third parties; a disclosure by employer to employee in confidence or with a tacit understanding, inferable from the attendant circumstances, that the information is confidential; or security precautions utilized by the employer

---

**16.** Taken in its best light, Serena's argument is that *Hayes–Albion* applies only to an initial determination that something, such as a plan or formula, is a trade secret. According to Serena, *Hayes–Albion* is inapplicable to the question of whether materials retain their secrecy after their deposit with the Copyright

Office. This Court disagrees. Nothing within the text of the *Hayes–Albion* opinion suggests such a reading. *See also Kubik, Inc. v. Hull*, 56 Mich.App. 335, 224 N.W.2d 80 (1974) (publication via unrestricted sale of twenty-two units containing alleged secret did not necessarily undermine secrecy).

to insure that only a limited number of authorized individuals have access to the information. *Id.* at 347–48, 224 N.W.2d 80. Here, as detailed above, Compuware has taken such measures, all of which were designed to ensure the confidentiality of its "protected" material. Compuware only disclosed its information to employees and licensed its products to potential and actual customers on the condition that they each promise to maintain the confidentiality of the materials, including but not limited to trade secrets.

In its advocacy for the entry of a summary judgment, Serena asserted that Compuware failed to submit redacted copies of its materials to the Copyright Office. This fact alone, however, is not dispositive. One need not make every conceivable effort to assure secrecy. In *Kubik, Inc.* the plaintiff made an unrestricted sale of twenty-two products after failing to market the products subject to a restrictive usage clause (like the one used by Compuware for its licensees). Nonetheless, the court looked to a variety of factors to determine whether the information was secret as a matter of fact, and concluded that the information was secret. *See id.* at 359, 224 N.W.2d 80.

In summary, Compuware has provided this Court with evidence of its significant efforts to guard the secrecy of its products. This evidence, especially when viewing it in a light that is favorable to Compuware, did not support the entry of a summary judgment. Thus, this Court, following its review of the contested Order, concludes that neither an error of law nor any palpable defect is evident in the rejection of Serena's application for a partial summary judgment.

## C. *Ease of Proper Acquisition or Duplication*

■ Finally, an analysis of factor (6) does not weigh in favor of Serena on this issue. A person cannot acquire the deposited copy of the document because it is the property of the United States. *See* 17 U.S.C. § 704(a). Moreover, one can only acquire certified or uncertified replications of deposit materials upon (1) the written authorization by the copyright owner or claimant of record, (2) the written request by an attorney in connection with actual or prospective litigation, or (3) an order by a court of competent jurisdiction in connection with a case wherein the requested materials are to be used as evidence. 37 C.F.R. § 201.2(d)(2).

Thus, the question is to what extent is it easy for members of the general public to view and duplicate the deposited materials at the Copyright Office. The regulations of the Copyright Office prohibit a person who views the copies from engaging in duplication. Section 1902.01 of the Compendium of Office Practices of the Copyright Office[17] provides that in order to view any materials concerning completed registrations, one must sign a "Request for Inspection of Copyright Deposit" which contains an "agreement not to copy or deface the material to be inspected." Under this same section, the regulations of the Copyright Office authorize the visitor to "make *limited* notes about the deposited copy . . . only on the form provided for that purpose by the Certification and Documents Staff" (emphasis in original), and the staff reviews all notes before the viewer leaves. Given these strict limitations, this Court reaffirms its conclusion that the facial arduousness of obtaining duplicate copies of deposited material warrants a rejection of Serena's argument on this issue.

In summary and contrary to the assertions by Serena, "a palpable defect [ (1) ] by which the Court and the parties have been misled [and (2) which demonstrates] that a different disposition of the case must result from a correction thereof," is

---

17. This compendium is recognized in the Code of Federal Regulations. *See* 37 C.F.R. § 201.2(b)(7) (1999).

not present in the contested Order of October 5, 1999.[18]

## IV

Given the posture of the present motion, it is worthwhile to state expressly why the authorities cited by Serena are inapposite. In support of its request for reconsideration, Serena relies substantially on *Blue Cross & Blue Shield of Mich. v. Insurance Bureau,* 104 Mich.App. 113, 304 N.W.2d 499 (1981),[19] which was decided by the Court of Appeals of Michigan three years prior to *Hayes–Albion,* 421 Mich. 170, 364 N.W.2d 609. Thus, *Blue Cross* is not precedential to the extent that it is inconsistent with *Hayes–Albion.*

More importantly, *Blue Cross* does not substantively support Serena's position. There, an insurance company, in an effort to prevent its competitors from learning its rate standards, asked the state Insurance Bureau to refuse to disclose the standards under the Michigan Freedom of Information Act (FOIA). *See* 104 Mich.App. at 118–19, 304 N.W.2d 499. Ordinarily, a provision of FOIA required public disclosure of the rates where, as there, an insurer requested a rate increase from the state in a contested petition. *See id.* at 127–28, 304 N.W.2d 499. Nonetheless, an exception to the disclosure requirement would lie for information that constituted a trade secret. *See id.* at 128, 304 N.W.2d 499. Hence, the insurer contended, in essence, that its rate standards were secret.[20] The court rejected that claim. *See id.* at 131, 304 N.W.2d 499.

Contrary to Serena's contention, the *Blue Cross* decision was not based on the

**18.** These conclusions are consistent with federal decisions that have applied similar state law. For example, the United States Court of Appeals for the Seventh Circuit (Seventh Circuit) considered the effect of publication under federal copyright law on a claim for trade secret misappropriation in *Technicon Med. Info. Sys. Corp. v. Green Bay Packaging Inc.,* 687 F.2d 1032 (7th Cir.1982) (applying Illinois law). There, Technicon (1) provided computerized business office services to the general public, and (2) prepared and disseminated a reference manual to its customers which was designed to assist them in their use of the computerized system. Each manual contained a proprietary legend and copyright notice. Pursuant to a contract, Green Bay Packing provided companion data processing services for Technicon's customers. Following the disintegration of the parties' business relationship, Technicon filed a lawsuit in which it alleged that Green Bay Packaging had misappropriated trade secrets relating to its computer software and manual in violation of their contractual agreement. *See id.* at 1033. The specific issue before the court was whether an affixation of the copyright notice of publication (i.e., a representation of non-secrecy) on the manuals and the publication of those materials to its customers should estop Technicon from claiming that the manuals contained trade secrets. *See id.* The Seventh Circuit, noting that the publication of the manuals was not general, concluded that the act of publishing the copyrighted works did not estop Technicon from asserting that the works contained trade secrets. *See id.* at 1039.

*See also Computer Assocs. Int'l v. Altai Inc.,* 982 F.2d 693, 715–21 (2d Cir.1992) (concluding (1) federal copyright law does not preempt state law claims for trade secret misappropriation and (2) substantial issues of fact remained concerning secrecy); *ISC–Bunker Ramo Corp. v. Altech, Inc.,* 765 F.Supp. 1310, 1321 (N.D.Ill.1990) (addressing concurrent copyright and trade secret misappropriation claims concerning proprietary computer software systems and finding, as a matter of fact, that copyrighted computer software and licensed manuals were trade secrets under Illinois Uniform Trade Secrets Act despite copyright registration), *discussed in* Alois Valerian Gross, Annotation, *What is "Trade Secret" so as to Render Actionable Under State Law Its Use or Disclosure by Former Employee,* 59 A.L.R.4th 641 (1988).

**19.** The core of Serena's argument is that "[u]nder Michigan law information is not 'secret' if it is either public or 'is readily ascertainable, *i.e.* capable of being acquired by competitors or the general public without undue hardship or difficulty.'" (Def.'s Br. Supp. Mot. Partial Summ. J. at 1 (citing *Blue Cross,* 104 Mich.App. at 129, 304 N.W.2d 499).) Serena seizes on its own insertion of the word "public" and submits that since Compuware's copyright deposits are technically public, they are not secret. (Def.'s Br. Supp. Mot. Partial Summ. J. at 1.)

**20.** The case did not involve a claim for trade secret misappropriation.

potential public availability of the information pursuant to FOIA.[21] Indeed, such a holding would have begged the question as to whether the information was disclosable under FOIA.[22] Instead, like the Michigan Supreme Court in *Hayes–Albion*, the court based its holding upon a factual determination. *See* 104 Mich.App. at 130–31, 304 N.W.2d 499. A hearing officer in a lower tribunal found, upon the insurer's own evidence, that the insurer gave its rate-standard information without restriction to the groups whom it serviced. *See id.* at 130, 304 N.W.2d 499. One of the insurer's witnesses stated that, "[g]roups are entitled to know how they are rated, and ... Formula I groups are provided with a copy of a formula. That is their right. Who they give it to is their business." *See id.* at 130–31, 304 N.W.2d 499 (internal quotation marks omitted). The state court of appeals reviewed the record, agreed with the hearing officer's conclusion (to wit, that the insurer had not taken measures to protect the confidentiality of the information before any question concerning FOIA arose), and found that the information was not secret. *See id.*

By contrast here, Compuware undertook extensive measures among its employees and customers to protect the secrecy of its manuals and other products. If accepted by this Court, Serena's argument would render public availability, alone and apart from public consumption, a dispositive fact in a trade secret misappropriation claim. This is not the present standard under Michigan law. On the facts of this case, Serena was not entitled to a summary judgment and is not entitled to a reconsideration of the Order of October 5, 1999.

Additionally, Serena has relied on *McAlpine v. AAMCO Automatic Transmissions, Inc.*, 461 F.Supp. 1232 (E.D.Mich. 1978), which also predates *Hayes–Albion* and is substantively distinguishable. According to Serena, *McAlpine* is a case where the court "found that depositing material with the Copyright Office waives trade secret protection in information disclosed in that material."[23] This representation is legally incorrect as applied to the present case.

The defendant in *McAlpine* had applied for a copyright for a diagnostic checklist, which did not contain any information or structure that had not already been in the public domain for years. *See* 461 F.Supp. at 1258; *see also id.* at 1256 ("Secrecy, in the context of trade secrets, implies at least minimal novelty."). According to the court, the checklist was not a written work, but was a form that did not itself convey information. *See id.* at 1259. Such forms are not subject to copyright protection. *See id.* Instead, they are the subject of patent law. *See id.* at 1255. The court found it important that, as a matter of patent law, when a plan does not qualify for patent protection it reverts to the public domain. *See id.*

Under the most straightforward reading of *McAlpine*, the court found that those materials that are subject to the patent laws and have been improperly submitted for copyright registration fall to the public domain. *See id.* at 1259. The opinion contained no discussion of the effect of a proper copyright registration—and the attendant submission of a public deposit copy—on informational secrecy. Emphatically, the court did not hold that the submission of properly copyrightable materials for registration undermines their secrecy.

---

21. Serena has asserted that the *Blue Cross* court considered "whether information available under Michigan's Freedom of Information Act could be secret given the public's right to access. The Court [sic] held that the information submitted to the State of Michigan could not be secret because it was not exempt from disclosure under Michigan's FOIA." (Def's Mot. Partial Summ. J. at 7 (citations omitted).)

22. The circular argument would be (1) information that is subject to disclosure under FOIA will be withheld only if it is a trade secret; and (2) information is not a trade secret if it is subject to disclosure under FOIA.

23. Def.'s Br. Supp. Mot. Partial Summ. J. at 9.

By contrast here, it is undisputed that the File–AID materials were the subject to copyright, not patent, law and had been properly copyrighted. Aside from conclusory denials in the pleadings, it is uncontroverted that the materials contain more than minimal novelty and are not merely a collection of information which had been a part of the public domain. The *McAlpine* decision neither compels nor suggests that this Court should have granted a summary judgment on the basis of Compuware's submission of a copy of its manuals to the Copyright Office.

Notably, the *McAlpine* court, in recognizing the danger of creating *per se* rules in the area of trade secrecy, opined that "a franchisor's claim [of secrecy of materials] must be evaluated upon a determination of the particular facts presented and not upon result oriented reasoning." *Id.* The statement is consistent with the *Hayes–Albion* analysis. Questions which address

the secrecy of trade information are ordinarily ones of fact, and such matters are inappropriate for summary judgment.[24]

## V

In summary, this Court denies Serena's motion for reconsideration of the Order of October 5, 1999 for the reasons that have been set forth above.

IT IS SO ORDERED.

---

**24.** Serena also cites *Tedder Boat Ramp Sys., Inc. v. Hillsborough County*, 54 F.Supp.2d 1300 (M.D.Fla.1999), which is inapposite to the instant case because the court applied Florida state law, which is substantively different from the law in Michigan.

Additionally, it is unclear whether the case, when taken as a whole, supports Serena's argument. *Tedder* cited a federal appellate case for the proposition that disputes over alleged appropriations of computer software materials—which were not at issue in *Tedder*—involve special considerations that allow secrecy to persist despite copyright registration. *See* 54 F.Supp.2d at 1303 (discussing *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir.1996)). Here, the litigants debate the secrecy of computer software-related materials, among other things, and neither *Tedder* nor *Bateman* suggest that software user manuals should receive different treatment.

Moreover, it is questionable whether the limitation of *Bateman* to computer-software cases by the *Tedder* court is appropriate because *Bateman* addressed the question whether *any* claim for trade secret misappropriation was preempted by the federal copyright laws. The *Bateman* court found that, under a Florida statute, the claims were not preempted since they involved the extra element of confidentiality. *See* 79 F.3d at 1549. It was

of no moment in *Bateman* whether the claims at bar concerned computer software.

Finally, the *Tedder* court relied on patent cases to find that registration undermines secrecy. That reliance arguably overlooked an important distinction between the respective deposit requirements of the patent and copyright statutes. The patent laws specifically promote public disclosure. *See Universal Oil Prods. Co. v. Globe Oil & Ref. Co.*, 322 U.S. 471, 484, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944) ("As a reward for inventions and to encourage their disclosure, the United States offers a seventeen-year monopoly to an inventor who refrains from keeping his [sic] invention a trade secret."). Indeed, they require that the inventor provide such a detailed description of the invention that a person of ordinary skill in the field can reproduce it. *See* 35 U.S.C. § 112 (1984); *Universal Oil Prods. Co.*, 322 U.S. at 484. By contrast, the purpose of the copyright deposit requirement is to promote identification of the content and copyrightability of protected works. *See Data Gen. Corp. v. Grumman Sys. Support Co.*, 36 F.3d 1147, 1161–63 (1st Cir.1994). The different purposes lead to different policies and practices concerning the use of such deposits, and Serena has not presented any argument why this important distinction should not render patent cases inapposite here.