**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0139n.06
Filed: February 22, 2005

No. 04-1120

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EARNINGS PERFORMANCE GROUP, INCORPORATED, | ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ROBERT L. QUIGLEY, JR.; EUGENE CARRIGAN; BANK INSIGHT, L.L.C.; MICHAEL G. STAVALE; STAVALE AND GEMMETE, P.L.L., | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

BEFORE:    MERRITT, MOORE and GILMAN, Circuit Judges

**MERRITT, Circuit Judge.**  The plaintiff-appellant, Earnings Performance Group, Inc. (hereinafter "EPG" or "plaintiff"), appeals the denial of a preliminary injunction to prohibit a Michigan lawyer from appearing in litigation against it in the federal District Court in New Jersey. The judgment below is not final, and the notice of appeal reads that "specifically, EPG appeals the court's denial of EPG's Motion for Preliminary Injunction pursuant to 28 U.S.C. § 1292(a)(1)." This diversity case raises questions regarding the conduct of the defendant lawyer, Michael Stavale, and his law firm, in two other lawsuits brought by EPG against his clients. EPG also sought in its complaint relief against Stavale and the other defendants in the form of "damages, interest and

attorney's fees." In addition to denying the Motion for Preliminary Injunction against Stavale, the district court also granted "the motion to dismiss by the Defendants Carrigan, Quigley, and Bank Insight." *Earnings Perf. Group, Inc. v. Quigley*, No. 03-73733 (E.D. Mich. Dec. 15, 2003). In view of the fact that the judgment below is not final, under § 1292(a)(1) we may review only the denial of the preliminary injunction. We review the grant or denial of a preliminary injunction under an "abuse of discretion" standard, taking into account the likelihood that the moving party will succeed on the merits and suffer irreparable injury without the grant of extraordinary relief, as well as the probability that granting the injunction will cause harm to others or fail to advance the public interest. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). We do not have authority under § 1292(a)(1) to review the dismissal of the non-injunctive claims adjudicated below; we therefore limit our interlocutory decision to the propriety of the District Court's refusal to grant a preliminary injunction.

## I. Factual Background

### A. The Michigan Lawsuit

In the first lawsuit, EPG sued defendants Quigley, Carrigan, and Bank Insight, LLC, who were represented by Stavale and his law firm. Quigley and Carrigan were former employees of EPG who had started a similar bank-consulting business in competition with EPG. EPG accused the former employees of misappropriating trade secrets, but after extensive preparation for trial, the parties settled the misappropriation case. Only the parties to the suit signed the agreement. Stavale was not a party, and he did not sign the agreement, even though it stated that it covered "employees, agents and representatives." In the first paragraph, the agreement states that it is "by and between

Earnings Performance Group, Inc." and "Eugene Carrigan, his heirs, successors, agents, representatives and assigns (referred to collectively as 'Carrigan'), Robert Quigley, Jr., his heirs, successors, agents, representatives and assigns (referred to collectively as 'Quigley'), and Bank Insight, LLC, its present and former officers, directors, shareholders, members, employees, agents, representatives . . . ." In paragraph 17, the agreement restates the same idea except that it adds an additional sentence that is somewhat unclear, but appears to mean that none of the listed nonsigning groups are mutually bound like the signatory parties:

> Binding Settlement. All of the terms and conditions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, devisees, personal representatives, divisions, subsidiaries, parents, affiliates, predecessors, directors, employees, officers, agents, shareholders, other representatives, successors and permitted assigns. Nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person other than the parties to this Agreement or as set forth herein.

In paragraph 9 of the Agreement, Quigley and Carrigan also agreed "not to assist or work with any third party regarding any" dispute or lawsuit with EPG. EPG relies heavily on this provision for its Motion for Preliminary Injunction against Stavale and for damages against the other defendants. This provision, section 9b(ii) of the Settlement Agreement, provides as follows:

> Defendants [Quigley, Carrigan and Bank Insight] agree not to assist or work with any third party regarding any claim or dispute between said third party and EPG. Accordingly, and without limitation, Defendants shall not act as a witness or offer to testify for such a third party. In the event any subpoena is served on Defendants for the production of documents or calling for a witness to testify by way of deposition or at trial in a case between a third party and EPG, Defendants shall immediately notify EPG and coordinate any response to the subpoena with EPG.

In the Agreement, Carrigan and Quigley also agreed to pay EPG $180,000. The settlement is a detailed 23-page document in which Carrigan and Quigley agreed to honor the provisions of their

earlier employee confidentiality agreement with EPG and to acquire by license from EPG for five years the right to sell or use in their business certain "services or goods" pertaining to the bank-consulting business.

### B. The New Jersey Lawsuit

Stavale and his law firm are defendants in the instant case because Stavale later agreed in another lawsuit to assist Profit Technologies Corporation, which was engaged in an action brought by EPG in federal court in New Jersey for misappropriation of confidential information from EPG. In order to avoid objection by EPG, Stavale first worked as a secret "consultant" for Profit Technologies for five months in preparing its defense. In his deposition, Stavale testified that his "consultant" representation "was not known to EPG." He billed over 200 hours during this five-month period. He advised Profit Technologies as to its defense against EPG's misappropriation case. Stavale advised Quigley and Carrigan that he was getting involved in the litigation when he became a consultant.

Stavale later became counsel of record for Profit Technologies in the suit. EPG immediately objected to Stavale's representation, and the court in New Jersey required Stavale to seek the approval of Quigley and Carrigan. They gave their approval in a "letter of understanding" drafted for them by Stavale. They testified that they viewed the settlement agreement as prohibiting only their personal "assistance," not as prohibiting their action authorizing their former lawyer to "assist" in the litigation against EPG. As a result of Stavale's representation of Profit Technologies in the New Jersey case, as authorized by Quigley and Carrigan, EPG in the instant case sued Stavale for breach of contract and inducement of breach of contract.

EPG also sued the nonlawyer defendants for breach of the non-assistance provision of the settlement agreement. The District Court found that Quigley and Carrigan did not "assist" Profit Technologies within the meaning of section 9b(ii) by authorizing Stavale to act as Profit Technologies' counsel. It concluded that the agree-not-to-assist provision should be interpreted to apply only to direct, personal assistance by Quigley and Carrigan such as "testifying" for the third party opponent of EPG, as recited in section 9(b)(ii). And the District Court found that there was no evidence that Stavale had in fact turned over any trade secret or confidential information or documents to Profit Technologies in connection with the New Jersey case.

Alternatively, the District Court cited Model Rule of Professional Conduct 5.6(b), which has been adopted in Michigan, and is a rule against restraints on competition and representation by lawyers: "A lawyer shall not participate in . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." The District Court concluded that "this Rule does not provide any special exception for settlement agreements involving the protection of confidential" information, and therefore "the plain language of Rule 5.6 supports the . . . Defendants' position that Stavale cannot be prohibited from representing [Profit Technologies] in the New Jersey litigation." The court declined to issue a preliminary injunction enjoining Stavale from representing the party opposing EPG in the New Jersey litigation. For the reasons that follow, we affirm.

## II. Analysis

Even if Stavale had signed the contract and had expressly promised either to appear or not to appear in any future litigation, it is doubtful that such a promise could be enforced by injunction or specific performance. Under the Restatement (Second) of Contracts § 188 (1981), a promise by an employee or agent not to compete in the future must be closely analyzed and invalidated as a matter of public policy if the "relationship is unreasonably in restraint of trade" arising from the fact that "the restraint is greater than is needed to protect the promisee's legitimate interest." The analysis required is designed to invalidate a contract interpretation "detrimental to the smooth operation of a freely competitive private economy." Restatement (Second) of Contracts § 186 cmt. a (1981). In addition, courts have been reluctant to uphold employment promises to refrain from competition based on the employee's knowledge of "confidential information" because employer claims of "confidential information" are "often difficult to distinguish [from] . . . normal skills of the trade," § 188 cmt. b, and because "the likely injury to the public may be too great if it is seriously harmed by the impairment of [a worker's] economic mobility, or by the unavailability of the skills developed in his employment," *id.* cmt. e. *See*, *e.g.*, *Hoskins Mfg. Co. v. PMC Corp.*, 47 F. Supp. 2d 852, 857 (E.D. Mich. 1999) (matters of general knowledge cannot be trade secrets).

The court below relied in part on a specific application of these general principles designed to apply to lawyers. The court cited Rule 5.6(b) of the Michigan Rules of Professional Conduct, which prohibits law partnership noncompete agreements in subsection (a) and states in subsection (b) that a lawyer shall not participate in "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties."

For these long-standing reasons of public policy regarding restraints on competition, it is doubtful that an injunction should issue prohibiting Stavale from representing Profit Technologies in the New Jersey litigation, even if he had signed the settlement agreement along with Quigley and Carrigan. We make no holding on this point, however, because Stavale did not in fact sign the agreement and obviously, therefore, is not bound by the agreement. These are clear policies underlying the common law in Michigan and the rules governing the legal profession in Michigan and they are relevant to the disposition of this action for a preliminary injunction. *See Sterling v. Cheatle*, No. 190313, 1997 WL 33348002, at *3 (Mich. Ct. App. May 27, 1997) (McDonald, J., concurring) (agreement reached between parties cannot personally obligate attorneys with regard to representation of other clients).

Taking these general public policies into account, we rest our decision on the conclusion, in agreement with the District Court, that the injunction against Stavale should not be granted because EPG has not shown a likelihood of success on the merits or the likelihood that it will suffer irreparable injury. Stavale did not sign the agreement and did not obligate himself to turn down employment as a lawyer in lawsuits against EPG that may be similar to the one in which he defended Quigley and Carrigan. Moreover, as the District Court found, there is no specific evidence that Stavale has improperly used EPG's trade secrets in his defense of Profit Technologies in New Jersey. EPG has offered nothing specific on this score, only generalizations such as its assertion that "Stavale's only qualification was that he was privy to knowledge obtained during his representation" in the earlier Michigan case. It may be true that Stavale used the "knowledge" that he gained in the earlier litigation, knowledge of the law, knowledge of the way the bank-consulting business works,

knowledge of computer programs sold to banks, knowledge concerning the personalities and characteristics of decisionmakers at EPG and other competing bank-consulting groups and so on. But this does not mean that he has used improperly EPG's trade secrets, and we cannot assume that he has done so in the absence of specific proof. It may be difficult to separate "confidential information" from "normal skills of the trade," as the Restatement observes, but EPG has the burden on this issue. *See Hoskins*, 47 F. Supp. 2d at 857.

In the absence of any such proof, neither do we see how EPG could be "irreparably harmed" by Stavale's representation. It may or may not be the case that his client has an advantage because he has previously handled a similar case, but this is not the kind of "irreparable injury" contemplated in the law of injunctive relief. *See Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (Rule 5.6(b) prohibits court from enforcing protective order based on speculative "head start" by lawyer due to previous representation in a similar matter because it would constitute an "unnecessary and unworkable restriction[] on the practice of law"). In view of the fact that there is no basis in the record before us that any of the parties in this case have disclosed to third parties, including Profit Technologies, any trade secrets or information prohibited from disclosure under any protective order entered in the prior Michigan case or the settlement agreement, we are persuaded that the District Court did not abuse its discretion in declining to issue a preliminary injunction prohibiting Stavale from acting as counsel for Profit Technologies in the New Jersey case.

Accordingly, the Order of the District Court is AFFIRMED.